## MURPHY V. HOBBS.

1. Where property has been converted and, prior to suit, it has been returned to and accepted by the plaintiff, or if he has recovered the possession thereof, such return or recovery does not bar an action for conversion, but such fact may be shown in mitigation of damages.

2. Any distinct act of dominion wrongfully exerted over one's property, in denial of rights or inconsistent with them, is a conversion, and this is true whether such wrongful dominion be exercised for the trespasser's own or another's use.

*Appeal from District Court of Weld County.*

HOBBS, plaintiff below, filed his complaint on the 30th day of November, A. D. 1880, against William J. Murphy, defendant below, alleging:

"I.

"That, on the 2d day of August, A. D. 1880, at the county of Weld, the defendant obtained a warrant for the arrest of this plaintiff, Willie B. Royce and Isaac L. Hoopes, from James H. Jones, a justice of the peace in and for the county of Weld aforesaid, on a charge of taking and removing, with felonious intent, two mules belonging (as was alleged) to the said defendant; and, also, of removing and running off two mules, mortgaged (as was alleged) by Thomas G. Hobbs, which said mort-

gage claim was held (as was alleged) by said defendant; and the plaintiff was arrested thereon and imprisoned for one hundred and seven days.

## "II.

"That, in so doing, the defendant acted maliciously and without probable cause.

## "III.

"That, on the 17th day of November, A. D. 1880, the grand jury of the county of Weld aforesaid ignored said charge, and found and returned as to the same, 'not a. true bill.'

## "IV.

"That, by means of the premises, the plaintiff was injured in his person, and has paid twelve and one-half dollars counsel fees in defending himself, and was prevented from attending to his business, and was injured in his good name and reputation, and was released from custody in a cold, inclement season of the year, when unfit to perform and unable to procure work,— all to his damages $5,000.

## "V.

"Wherefore, plaintiff prays judgment against the defendant for the sum of $5,000 and costs of suit."

Defendant answered as follows:

"*First.* He admits that, on or about the 2d day of August, 1880, in the county of Weld, he procured a warrant from one James H. Jones, a justice of the peace, for the arrest of said plaintiff; that the plaintiff was arrested upon said warrant, and imprisoned; but, as to the allegations that he was imprisoned for a period of one hundred and seven days, and that he was put to twelve and one-half dollars (cost) in defending himself, he has not and cannot obtain sufficient knowledge or information upon which to base a belief.

"He admits that on or about the 17th day of November, 1880, the grand jury of said Weld county ignored the said charge for which said plaintiff was arrested.

"*Second.* The defendant, further answering said complaint, denies, upon information and belief, that, in procuring said warrant and causing the arrest of said plaintiff, he acted maliciously or without probable cause; he in like manner denies that plaintiff was injured in his person, or in his good name, or that he has suffered damages by reason of the premises charged in the complaint, or otherwise, to the amount of $5,000, or in any sum.

"*Third.* And for a further and third defense herein, the defendant alleges, upon information and belief, that on or about the said 2d day of August, and for a long time prior thereto, the defendant was the owner of two of the mules in the complaint mentioned; that, at the same time, the said plaintiff was indebted to this defendant in a considerable sum of money, for which the defendant held the promissory note of plaintiff, and also a certain chattel mortgage upon the other of said two mules, to secure the payment of said indebtedness and said note; that said mortgage was then and there a valid and subsisting lien upon the said two mules therein described.

"That, at the same time, the said plaintiff was in the employ of this defendant, and, as such employee, had the care and custody of said two mules of the defendant, and also of the said other mules covered by and mentioned in the said chattel mortgage.

"That, so having the custody and possession of all of said mules, on or about the 1st day of August, A. D. 1880, and on Sunday, in the night-time, clandestinely, wrongfully and feloniously, and with intent to embezzle, take, steal and carry away all of said mules, and to deprive the defendant of his property therein, and to take and drive away all of said mules from the place where the said mules then were, and where they were being

worked for the defendant in said county of Weld, a long and great distance, to wit, about sixty miles; that plaintiff then and there well knew that he had no right to remove said mules; that as soon as this defendant was informed of the taking and removal of said mules, and on the same day, he started in pursuit of said property, and afterwards, and in the evening of the same day, he overtook and found plaintiff and the mules at a place about sixty miles distant from where the mules had been taken, and from the place where said mules had been employed; that, when he found said mules, he found them in possession of the plaintiff; that all of said mules then had the appearance of having been driven very hard, and appeared very much exhausted by such driving.

"That the defendant, finding said mules in the possession of plaintiff, so far away from where they belonged and where they had been at work, and finding them so over-driven and exhausted by hard driving, and knowing that plaintiff had taken and driven away the same in the secret and clandestine manner aforesaid, and knowing that the said plaintiff had no right or authority to so take and drive away said mules, he was induced to believe, and in truth and in fact did believe, without any malice, that said plaintiff had feloniously stolen or embezzled, and taken and driven away, said mules, with the intent feloniously to deprive the defendant thereof, and of his property therein; and, so believing, he did procure a warrant from said justice of the peace for the arrest of plaintiff, as he lawfully might, as he is advised, and as he then believed and does still believe. That the arrest above mentioned is the same charged in the complaint herein, and no other or different.

"That, upon examination had before the said justice of the peace, said justice adjudged and determined that there was probable cause to believe plaintiff guilty of feloniously taking and stealing said mules; and thereupon said justice of the peace adjudged and held plaintiff

to bail for his appearance to the then next term of the district court of Weld county, to then and there answer to said charge; and, in default of such bail, that said plaintiff be committed to jail; that plaintiff, neglecting to furnish and give bail, was committed by said justice to jail; which is the same imprisonment mentioned in the complaint, and none other or different.

"Wherefore the defendant demands judgment that plaintiff's complaint be dismissed."

Defendant replied as follows:

"Denies that, on said 2d day of August, 1880, or for a long time prior thereto, or at any time, the defendant was the owner of the mules in the complaint mentioned.

"Admits that, on or about said date, this plaintiff was indebted to said defendant in a considerable sum of money, to wit, in the sum of $270 or thereabouts, and that defendant held the promissory note of plaintiff for said indebtedness, and also a certain chattel mortgage upon two of said mules, as stated in said answer; but plaintiff avers that said note and chattel mortgage were executed in the state of Nebraska, payable to one Louis Hedburg, and were transferred to and held by defendant pursuant to a special agreement and contract between this plaintiff and defendant, by which plaintiff was to take said mules from said state of Nebraska to the state of Colorado, and work in said last-mentioned state with said mules for said defendant at certain wages until said indebtedness should be entirely paid and discharged thereby.

"And plaintiff further avers that he, plaintiff, was working and acting in strict compliance with said contract, on his part, when he was arrested and committed to jail as set forth in said complaint, all of which defendant then and there well knew.

"Denies that plaintiff, on or about the 1st day of August, A. D. 1880, in the night-time, or at any time, clandestinely or wrongfully or feloniously, or with intent

to embezzle or take, steal or carry away all or any of said mules, or to deprive defendant of his property therein, did take or drive away said mules, or any of them, as alleged in said answer.

"But plaintiff says that, on or about the 1st day of August, 1880, in the morning, he started with said mules to go to another point on the line of said railroad on which he was at work for said defendant, about forty miles distant, at which point he was by said contract engaged to work for defendant, and where defendant had promised plaintiff there was grazing for said mules, of which removal plaintiff had previously notified defendant, and which defendant well understood and agreed to, and which is the same taking and removal of said mules mentioned in said answer.

-"Denies that plaintiff well knew he had no right to so remove said mules, but, on the contrary, avers that he had a perfect right so to do, and that defendant well knew it.

"Denies that defendant found said mules at a place about sixty miles distant from where they had been taken and employed, but avers that it was about forty miles therefrom, and at or about the point where plaintiff was engaged to work with them for defendant, as aforesaid.

"Denies that all or any of said mules, when found and overtaken by defendant, had the appearance of having been driven hard, or appeared very much exhausted, as stated in said answer; and avers that defendant drove said mules five miles further on that same night, after overtaking them.

"Denies that defendant, for the reasons stated in said answer, or for any reason or reasons, was induced to believe, or did believe, that plaintiff had feloniously stolen or embezzled, or taken or driven away, said mules with intent to deprive the defendant thereof, or of his property therein, or with any wrongful intent.

"Denies that, on account of said pretended belief, or having any such belief, he procured the warrant mentioned in said answer, as stated therein.

"And the plaintiff avers that the determination of said justice of the peace, that there was probable cause to believe the plaintiff guilty, mentioned in said answer, was based upon the false testimony of the defendant at said examination; and the plaintiff denies that thereupon the said justice adjudged and held said plaintiff to bail for his appearance to the then next term of the district court of Weld county, as stated in said answer."

On the 27th day of October, A. D. 1881, the defendant moved the court "to continue this action, on account of the absence of said defendant and because certain commissions theretofore issued from this court to take the testimony of George Lehman, a material witness for the said defendant, and the testimony of Julius Farlee, another material witness for said defendant, both of which said witnesses were non-resident in this state, and were absent therefrom, and on such motion the defendant read the following affidavits, entitled in the case of *Isaac L. Hoopes v. William J. Murphy*, then pending in said court, and which, it was stipulated in open court by counsel for the respective parties, might be read on the motion for a continuance of this cause with the same force and effect as if entitled in this action, to wit:"

James C. Scott, being duly sworn, deposes and says: That he resides in Greeley, in said county of Weld; that he is one of the attorneys for the defendant above named; that he knows said defendant; that defendant, soon after the commencement of this action, fully and fairly stated the case in this action to deponent, as he believes, and from such statement deponent was induced to believe, and does still believe, that said defendant has a good and substantial defense to this action upon the merits, and so advised said defendant, after hearing his said statement, so made as aforesaid.

Deponent further says that said defendant advised this deponent of the facts and circumstances which he expected to prove on the trial hereof, by one George Lehman, who resided, as deponent was advised, in Columbus, in the state of Nebraska; that deponent and his associate counsel herein, on or about the 5th day of September last, prepared interrogatories and procured a commission to be issued to take the testimony of said Lehman, and the attorneys for the plaintiff herein prepared cross-interrogatories, which were attached to said commission; that it was stipulated in substance by the attorneys of the parties hereto, that the testimony of the said Lehman, so to be taken, might be read upon the trial of this action, and also on the trials of two other actions pending in this court, wherein one Thomas G. Hobbs is plaintiff, and the defendant herein is defendant; that said commission and interrogatories and cross-interrogatories were duly prepared, for the purpose of taking the testimony of said Lehman, on or about the 5th day of September, A. D. 1881, but the same has not yet been returned; that, soon after that time, deponent was informed that said Lehman had left Columbus, Nebraska, and gone to a place called Granger, in the territory of Wyoming, to which place said commission and interrogatories and cross-interrogatories were sent; that, thereupon, it was agreed in substance, by the parties hereto, that said Lehman might write out his answers to said interrogatories and cross-interrogatories, and subscribe the same, and, thereupon, the same might be read on the trial hereof, and also in said two other cases, the same as if taken by and before the commissioner named in said commission; that deponent has not received said Lehman's testimony, and the same has not been returned, as deponent is advised and believes; that, as deponent is advised and believes, said defendant can prove by the testimony of said George Lehman, if he can procure his testimony, the following facts and circumstances, namely:

That said Lehman knows the defendant and the said Thomas Hobbs; that in July, 1880, he resided in Columbus, Nebraska; that he was well acquainted with the mules in controversy between said Hobbs and defendant; that, in the latter part of July, 1880, he was present in Columbus, Nebraska, when said Thomas Hobbs sold and agreed to deliver to the defendant the large pair of mules in controversy, and that, on the following Monday, said Hobbs did deliver said large pair of mules to said defendant's agent, in pursuance of said sale; that he knows that the defendant, Murphy, bought the mortgage on the other mules in controversy.

Deponent further says that he has been expecting all the time since said commission was sent to Wyoming, to have the testimony of the said Lehman returned into court.

Deponent believes that before the next term of this court, the testimony of the said Lehman can be procured to be read on the trial hereof; that he has used all the diligence in his power to procure the testimony of said Lehman at this time; that, as deponent is informed and believes, said Lehman resides a long distance from any officer or magistrate competent to take his deposition.

Deponent further says that, as he is informed and believes, one Julius Farlee is a material and necessary witness on behalf of the defendant, on the trial of this action; that said Farlee is a freighter in the southern part of the territory of New Mexico; that, about the 1st of September, A. D. 1881, he caused a commission to be issued out of this court to take the testimony of said Farlee; that deponent was informed, about the 13th day of October, A. D. 1881, that said Farlee had gone into the territory of Arizona, and was there detained as a witness in a murder trial,   *   *   *   and that the said Farlee would be there detained about two weeks; that, for that reason, as deponent believes, the testimony of said Farlee has not been returned into court.

That, as deponent is advised and believes, the defend-

ant will be able to prove by the said Farlee the following facts and circumstances, namely:

That said Farlee was present in Columbus, Nebraska, about the last of July, 1880, when defendant Murphy bought the tall bay mare mule of said Thomas G. Hobbs, and the conditions and terms of said sale, and that said Hobbs was to deliver said mules to the defendant on the following Monday.

Deponent further says that the attorneys for the respective parties agreed, in substance, that the testimony of said Farlee, when taken, might be read in this case, and also in the two other cases above referred to; and deponent says that he used all the diligence in his power to procure the testimony of said Farlee by this time, and it is without any fault on the part of deponent that the same has not been returned.

That deponent was entirely unaware of the difficulties in the way of taking the testimony of said witnesses; that deponent has done all in his power to procure the testimony of each and both of said witnesses, but the same has not yet been returned.

Deponent further says that the defendant, William J. Murphy, is a contractor engaged in the construction of said roads; that he is not a resident of the state of Colorado, but is at present engaged in his business of constructing railroads in the territory of New Mexico.

That he is away, as deponent is informed and believes, a long distance from any telegraphic communication; that deponent informed him by letter, several days ago, of the time when this term of court would sit, and advised him that he must be present thereat; that he has not yet arrived; that said Murphy is an active business man, and actively engaged in business; and deponent verily believes there is some good reason why said Murphy is not present at this term of court, although deponent is not advised, and cannot say, why said defendant is not present, or what the occasion of his absence is.

That deponent verily believes that, if the trial of this

cause can be postponed until the next term of court, the testimony of said witnesses can be procured, and said Murphy will be present thereat.

Deponent further says that, as he is advised and believes, the defendant will testify to all the facts set forth in the answer herein, and all the circumstances connected therewith.

That this action has never been postponed by the defendant, and this application is not made for the purpose of delay, but for the sole purpose of being able to get the testimony of said witnesses and the testimony of said defendant Murphy.

Deponent further says that the summons herein was served on the defendant only a few minutes before he was to take the cars for New Mexico, and when he was all ready to go to engage in his business of railroading; that he then had a large outfit of mules, wagons and the like, and was just to start; that this deponent then had no opportunity to learn from him who his witnesses were or where they lived; that as soon as he could learn who they were and where they were, he at once set about to take their testimony, and has left no step untaken that would insure the getting of the testimony of said witnesses and of having the defendant here present at this term, and deponent believes that at the next term of this court the defendant will be present and the testimony of said witnesses can be procured.

The following affidavit was also read in support of said motion:

James C. Scott, being first duly sworn, says: He is one of the attorneys for the defendant. That the defendant is absent from the state of Colorado. That on the 10th instant the above entitled cause was set for trial on the 25th instant; that he immediately sent a telegram to said defendant at New Albuquerque, in the territory of New Mexico, which, deponent believed, was the nearest point by telegraph to defendant; that at about noon of last

Tuesday deponent received from defendant a telegram from said New Albuquerque, informing deponent that it was impossible for defendant to reach here in time to be at the trial; that defendant is a railroad contractor, at present engaged in constructing a railroad in the territory of Arizona, and has a large force of men at work; and deponent believes there is some good reason why defendant is not present at this term of court.

Deponent further says that George Lehman is a material witness in this case and in two other cases wherein Thomas G. Hobbs is plaintiff and this defendant is the defendant therein; that said Lehman was present at Columbus, Nebraska, when a certain contract was made between Hobbs and this defendant; that deponent was unable to ascertain the postoffice of said Lehman until about a month previous to the commencement of this present term of court; that he immediately obtained a commission of this court to take his testimony; that counsel for the plaintiff in this action, and also in said other actions, stipulated with deponent that the deposition then to be obtained of said Lehman might be used in all three actions; that said commission and interrogatories and cross-interrogatories were immediately sent to said Lehman, at Granger, in the territory of Wyoming; that it was also stipulated that if no officer qualified to administer an oath could be found, that said Lehman might himself write his answers to the questions therein propounded, and certify the same to be true; that deponent now holds the receipt of said Lehman, dated October 4, 1881, that he had received the said commission by registered letter; that afterwards, and on the 8th day of October, 1881, deponent received a postal card from said Lehman, stating that he would prefer to testify at court, but could not leave his business; that deponent, about the 10th instant, showed said postal card to one of the attorneys in the case, who immediately wrote to said Lehman (as he informed deponent) to send deposition.

That the deponent, in apt time, in like manner, forwarded a commission to take the testimony of one Julius Farlee, at Flagstaff, in the territory of Arizona, with like stipulation to use the same in all three cases; that said Farlee is a material witness in this action, is a freighter by occupation, and, when last heard from, about a month ago, was detained as a witness in a murder case at some point unknown in the state of Nevada; that neither of said depositions have been returned to the clerk of this court.

Deponent states, upon information and belief, that one John H. King, now resident at South Royalston, in the state of Massachusetts, was appointed special constable to arrest and convey from the office of the examining magistrate, James H. Jones, a justice of the peace in said county of Weld, to the county jail at Greeley, the said plaintiff and said Hobbs; and said Royce acknowledged to said special constable, John H. King, while he was conveying them to said jail, that they (Hoopes, Hobbs and Royce aforesaid) were, in fact, on their way to Virginia City, which was a great distance off, and in the state of Nevada, as deponent does, in fact, believe; that deponent first obtained this information on the evening of the 24th instant, and does, in fact, believe that said John H. King is a material witness in this action, and the other two actions referred to, and, upon the trial thereof, would testify that said plaintiff and said Hobbs informed him they were on their way to Virginia City when arrested.

Said affidavits were duly signed and sworn to.

The court denied the motion, and directed the trial to proceed.

The plaintiff recovered a verdict for $2,780, upon which the court entered judgment.

Mr. W. B. Mills, for appellant.

Messrs. Haynes, McCleery and Haynes, for appellee.

HELM, J. There was no error in denying the motion for a continuance. No valid excuse was given for deferring, for a period of nine months after suit commenced, all effort to obtain the testimony of the absent witnesses. Neither does the affidavit show sufficient reason for the failure of appellant to attend the trial.

Where there has been a conversion of property, and, prior to suit, it has been returned to and accepted by the plaintiff, or if he has recovered the same, the return or recovery does not bar an action for the conversion; such fact may, however, be shown in mitigation of damages. Moak's Underhill on Torts, 97, and cases cited; *Murray v. Burling*, 10 Johnson, 170; *People v. Bank of N. A.* 75 N. Y. 547.

When appellant compelled appellee to hitch his mules to the wagon and drive to Probst's, he not only exercised duress over appellee's person, but also dominion over his property; and this dominion was further asserted by appellant's order, which was obeyed, that the teams and wagon should be left at Probst's. These acts were inconsistent with appellee's control of the property, and practically a denial of his right so to do. Coupled with the fact that appellant made no effort or offer to return the wagon to appellee, they fairly create the presumption that the former's control was exercised for his own benefit.

"Any distinct act of dominion wrongfully exerted over one's property in denial of his rights, or inconsistent with them, is a conversion;" and this is true whether such wrongful dominion be exercised for the trespasser's own or for another's use. Cooley on Torts, 448, and cases in note 5; Addison on Torts, 467.

The fact, if it be a fact, that appellant, after carrying appellee before the justice, and causing him to be incarcerated in the county jail, returned and took the mules, but left the wagon, does not avoid liability for the original conversion.

In view of all the evidence before us, we think appellant answerable in this action for the value of the wagon when converted, less its value when recovered by appellee.

In our judgment, therefore, the amendment of the complaint allowed at the trial did not set up a new cause of action.

It is admitted by the pleadings that at the time of the conversion appellant had a valid lien upon a portion of the property for $276 and interest. That the same existed by virtue of a chattel mortgage given to secure a promissory note for that amount.

The jury evidently did not deduct this sum from the value of the property as found by them, and upon this appellant predicates a claim of error.

Appellee avers and attempts to prove an agreement by which this debt was to have been paid in work for appellant. But it is sufficient to say that, without such agreement, the jury would not have been warranted in allowing the claim.

The note and mortgage were not offered in evidence; neither of them appears in the amended pleadings; at the time of the conversion, when ownership of the lien is admitted, the note was not yet due; for aught that appears, before the maturity thereof it may have been negotiated, and, of course, with it the mortgage lien would have passed to the assignee; if appellant still owned the note, and desired credit for the amount, he should have given proof of such ownership at the trial.

The mortgage, as already suggested, was not before the jury; and, therefore, the clause claimed to have been embodied therein, which authorized taking possession of the property whenever appellant felt insecure, could in no event have influenced their verdict. But upon this subject, it is to be observed that appellee asserts and endeavors to establish the consent of appellant to his removal of the property at the time it was seized by the latter.

It is difficult to determine what was meant by the instruction considered under the eighteenth asssignment of error. But we are unable to conclude that it could in any way have prejudiced appellant's rights.

We discover no error or irregularity for which the judgment should be reversed. It will, therefore, be affirmed.

*Affirmed.*