## WEBSTER and wife *against* MERRIAM and others.

The reversionary interest of the heirs of a deceased person in lands, of which his widow has an estate in dower, may be the subject of distribution among those heirs, during the widow's term.

*Qu.* Whether the powers of distributors, when they have made their return, and that return has been accepted by the court of probate, are not at an end.

| | |
|---|---|
| 9 | 225 |
| 64 | 54 |
| 9 | 225 |
| 70 | 515 |
| 9 | 225 |
| 72 | 559 |
| 9 | 225 |
| 74 | 260 |
| 9 | 225 |
| 75 | 601 |

*Litchfield,*
June, 1832.

Webster
*v.*
Merriam.

Where distributors were appointed, on the 3rd of *November*, 1800, to distribute to the widow and heirs of a deceased person their respective shares of his estate ; they distributed all such estate, except the reversion of the lands assigned in dower, and on the 20th of the same month, made their return to the court of probate, which was accepted ; and on the 22nd of *June*, 1830, other distributors were appointed to distribute such reversionary interest ; on an appeal from this decree, it was held,   1. that the legal presumption that the former distributors were alive and competent to act, when the latter were appointed, was rebutted by the lapse of time ; 2. that in support of the decree of probate, extrinsic evidence of the death of the former distributors, was admissible.

On an appeal from a decree of probate accepting the return of distributors, it is competent to the appellants to show, that the distribution is unequal and unjust.

THIS was an appeal from two decrees of the court of probate for the district of *Litchfield*, one passed on the 22nd of *June*, 1830, the other on the 2nd of *November*, 1830.   By the former, *Erastus Lyman*, *William Battell*, jun. and *Erastus Hodges* were appointed distributors, to distribute to those entitled thereto, so much of the estate of *William Merriam*, deceased, as had not previously been distributed, *viz.* that part which had been set out as dower to the widow, *Deborah Merriam*.   By the latter decree, the return of the distributors, after they had performed the duty assigned them, was accepted and approved.

The appellants assigned the following reasons of appeal : That on the 3rd of *November*, 1800, *Frederick Phelps*, *Abijah Catlin* and *Stephen Graves*, being disinterested freeholders, were regularly appointed distributors of the estate of said *William Merriam*, and were duly authorized to distribute to his widow and heirs their respective shares of said estate ; and these distributors, being sworn according to law, made a distribution of said estate, and on the 20th of *November*, 1800, reported their doings to the court of probate, by whom the report was accepted and established.   By this distribution all of the estate was distributed, except the reversion in the real estate set to the widow of the deceased ; which was not divided among the heirs.   The widow is still living ; and her dower estate still exists in all the property, of which the decree complained of directed the distribution.   The appellants further alleged, that such distribution was unequal, unjust and oppressive to them.

On the trial before the superior court, the appellees offered evidence to prove, that the distributors appointed on the 3rd of

*November*, 1800, were not alive on the 22nd of *June*, 1830, when the order of distribution complained of, was made.   As the fact of the death of those distributors was not stated in either of the decrees complained of, the appellants objected to the admission of the evidence offered.   The court found the facts stated in the reasons of appeal, to be true ;  and it was agreed, that the distributors first appointed were in point of fact dead ;  so that that fact also is to be taken as true, if the evidence relating to it is admissible.

The case, thus made, was reserved for the advice of this Court.

*P. Miner* and *O. S. Seymour*, for the appellants, contended,
1. That the reversionary interest in lands, which have been assigned to the widow as dower, cannot be distributed among the heirs, without the consent of all, until the expiration of her term.   *Sumner* v. *Parker*, 7 *Mass. Rep.* 79.

2. That new distributors could not be appointed, while the old ones were alive, and while their authority was unrevoked ; and the fact of their death not appearing on the records of the court of probate, it could not be proved by evidence *aliunde*. *Griffin* v. *Pratt*, 3 *Conn. Rep.* 514, 15.

3. That the proceedings of distributors may be examined into, by the court of probate, and on appeal, by the superior court. *Sever* v. *Sever*, 8 *Mass. Rep.* 132.   *Porter* & ux. v. *Collins* & al. 7 *Conn. Rep.* 1.

*T. Smith* and *Woodruff*, for the appellees, contended,
1. That the court of probate had a right, at any time, to order a distribution of the property in question, subject to the incumbrance of the widow's life estate therein ; the power of distribution extending to " all the estate, both real and personal, of any person dying intestate," without qualification or exception.   *Stat.* 206, 7. *tit.* 32. *c.* 1 *s.* 29. 30.

2. That after the first set of distributors had made a distribution and returned their doings to the court of probate, and that return was accepted by the court, and acquiesced in, by the parties, for nearly thirty years, it was competent to the court to appoint a new set of distributors to perform a further duty ; and if it was necessary for this purpose, that the former distributors should be dead, this fact might be presumed from the lapse of time, or shewn by extrinsic evidence.

3. That the judgment of the distributors relative to the value of the property and the manner of partition among the heirs, is conclusive.

WILLIAMS, J. The appellants claim, that no distribution could be made, by a court of probate, of the land, of which the widow was endowed, during the existence of her life estate. They claim, that such a practice would produce many inconveniences, and is not authorized by statute.

There are, doubtless, cases, in which, from the particular situation of the property, a distribution might be unnecessary and even disadvantageous. Other cases may exist, where the property was so situated and it was so necessary for some of the heirs to dispose of their share, that it would be much for their advantage to have a distribution ; and this single consideration satisfies me, that a power to distribute, lodged in proper hands, would be a salutary authority, and might often prove highly beneficial. The real question, however, is, whether the legislature have granted this power to the court of probate ? And this must depend upon a sound construction of the statute.

By the 29th section of the statute, (*tit.* Estates,) the court of probate is empowered to make a just division or distribution of all the estate, both real and personal, of an intestate ; one third of the lands and houses to the widow, during her life ; and all the residue and remainder of the real and personal estate to and among the children, &c. It would seem as if this provision was amply sufficient to justify the court of probate in directing a distribution of all the property that the deceased left ; and it is apparent, that a distribution of two thirds of the estate in fee, and one third for life, is not a distribution of *all* the estate, a reversion in one third remaining undivided : of course, the division is not as extensive as is the power to divide. The words *all my estate* in a will, would convey a reversion or remainder, as well as an interest in possession ; and I see no reason why the same words in a statute should not have the same effect, unless there are other expressions showing a different intent. So far from that, however, this construction comports better with the general intent than a more narrow one ; because our law is extremely solicitous, that a complete settlement of the estate of deceased persons should be made, as soon as it can conveniently be done. It cannot, therefore, be

supposed, without strong evidence, that a power of this kind should be denied to the court of probate, as to a small part of this estate, when a general power is given as to the greater part. But in addition to this, the 34th sect. expressly provides, that " the widow's dower or thirds in the real estate, at the expiration of her term, shall also be divided as aforesaid, *if the same remain undivided.*" Were there any doubt of the true construction of the power given in the 29th sect., this would remove it ; as it proceeds entirely upon the ground, that the estate may have been divided before the death of the widow. The effect of this is ingeniously attempted to be avoided, by saying, that this may refer to the provision for a division by the heirs among themselves, which they are empowered to make by the 29th section. It is true, that the heirs may make a division among themselves ; but it is to be remarked, that the same section before alluded to, which authorizes the courts of probate to cause distribution of *all the estate*, makes the exception—" unless all persons interested in any estate shall mutually agree upon a division, &c. in which case, such agreement shall be accepted and received for a settlement of such estate." Upon every ordinary principle of construction, we must believe, that the estate spoken of in the latter clause of the statute, is the same, and none other than that spoken of in the former clause of the same statute. The exception cannot be greater or more extensive than that from which it is excepted. The authority to the court is general to divide all the estate and is direct ; the authority to the heirs, only limits that to the court in a given case. It is impossible, then, to believe, that the legislature intended to give the heirs power to divide any part of the estate, which the court has not. It follows, then, that if the court has no power to divide this reversion, the heirs have none ; consequently, the 34th sect. is a dead letter.

The case of *Sumner* v. *Parker* was much relied upon, by the appellants. There the question was, whether the statute of *Massachusetts* gave power to the court of probate, in the original distribution of an estate, where there were two or more heirs, to settle the reversion of the widow's dower upon one of them, he paying the appraised value to the other. This provision is founded entirely upon the idea, that in certain cases the property *cannot be divided without great prejudice to, or the spoiling of the whole.* The court, in giving their opinion in that case, consider their various statutes and the intent

of the legislature, and draw their conclusions from the whole, that in that case, the court had not the power to distribute an appraised value to one of the heirs of his share of the reversion, during the life of the widow. This opinion was founded upon the general intent of the legislature, and the particular expressions of their statutes, and cannot be applicable here, unless the general object and expressions of their statutes and ours are similar. The object of that provision in *Massachusetts* was, to prevent a prejudice to the estate, by a division. Here, the object is, to divide *all* the estate, if it can reasonably be done. There, the widow's thirds are to be divided *at the expiration of the term:* here they are there to be divided "*if the same remain undivided.*" Without any further examination of that case, it seems to me, that even were it an authority in this state, it would not affect the decision in this case, how much soever some of the reasoning of the court may bear upon it.

It was also claimed, that this order was defective, as it appeared to be an order to distribute a part of the land of the deceased; and it did not appear, that it embraced all the estate. It is, however, stated, that the order was to distribute all the estate not before distributed, *viz.* that part which was set to the widow. Were it otherwise, however, the court would not presume, that the order embraced only part of the estate, which remained undistributed. The appellants claimed, that the court of probate could not appoint new distributors, unless it appeared upon the proceedings, that the former distributors were dead; and they objected to the admission of parol testimony of that fact.

After those distributors had made their return, and that return was accepted by the court of probate, I incline to think, that their powers were ended; and that it was not necessary to show, that they were not alive. Without deciding that point, however, in the absence of all proof, and after the lapse of nearly thirty years, I should doubt the propriety of reversing this decree, upon the presumption that these distributors were now alive, and competent to act. A deed or will of thirty years standing requires no proof from witnesses; the legal presumption is, that they are dead, or do not remember such an ancient transaction; and if this case is not precisely within that rule, as five months are wanting to complete thirty years, I see no legal objection to proof of the fact.

These appeals from probate are not writs of error, though somewhat analogous to writs of error; and an order of probate is not to be tested in the same manner as a special plea. The objection is, that these distributors should not have been appointed, because others had formerly been appointed, whose duty it is to complete the distribution. That is not true in fact, says the opposite party, as I can shew. It is claimed, however, that such proof is inadmissible; and that this judgment must be reversed and the cause sent back, for the court of probate to find this fact; and then, upon the strength of it, make the same decree. But as this is an appeal, not strictly a writ of error, I see not why this court cannot admit the same testimony to support the decree of probate, as that court could do, when it made the decree. And in a state whose proceedings are most analogous to ours, where an administrator had been appointed, by the court of probate, in the county of *Suffolk*, upon the estate of one who died abroad, and it did not appear by the decree, or the inventory, that the deceased left estate within the district, the court admitted parol evidence of that fact. *Harrington* v. *Brown*, 5 *Pick.* 519. I think, therefore, that the objection to the testimony ought not to prevail.

One other question has been made in this case: Can the appellants be permitted to show, that the distribution was inequitable, unjust and oppressive? If this can be done before the court of probate, it may be done in this court; as the return is subject to the same exceptions here as it was in the court below. *Sever* v. *Sever*, 8 *Mass. Rep.* 132. And that such has been the practical construction in the courts of probate, I cannot doubt; and as little do I doubt that it is the correct construction. The law requires, that the *court* of *probate* shall make a just division or distribution. It is to be the act of the *court*. The court, however, is to do this act, by sufficient freeholders; but as it is the act of the court, it ought to have a supervisory power over those whom it appoints to perform that act. Without such a power, the court cannot see or know whether it be a *just division* or not. Indeed, it must necessarily be precluded from any enquiry. Now, when we find the legislature, notwithstanding all their anxiety for the speedy settlement of estates, providing, that an appeal shall be allowed from *every order, decree, or judgment* of the court of probate, can we believe, that they intended a decree or judgment of three freeholders should be conclusive as to the

*Litchfield,*
June, 1832.

Webster
*v.*
Merriam.

shares of the several heirs ? more especially as these freehold-ers may be appointed without any hearing as to the propriety of the appointment, and without any provision whatever, that they shall give any notice to the several persons most interested in their proceedings ?

The case has been compared to that of auditors and arbitrators. The latter are judges of the parties own choosing, and are by them substituted for the court ; and auditors are by law expressly required to give notice to the parties ; and then their award is not final, but may be enquired into as to mistakes upon their own principles and mistakes in law. *Spencer* v. *Usher,* 2 *Day* 116. 121.

It is said, that this principle will be very inconvenient in practice, as the court will be constantly called upon to revise the decisions of distributors. A sound discretion will prevent any interference for trivial mistakes or slight inequalities ; and this being understood, there is little danger of appeals for such causes. On the other hand, if an appeal is not allowed, great estates may be divided, by three men, appointed without the knowledge, and perhaps contrary to the wishes of some of those most interested in the appointment ; and the division may be made without their knowledge ; and without any imputation upon the motives of those who made it, the distribution may be unequal and unjust, and yet must be final.

Such a construction would be contrary to the whole policy of our law, which allows appeals from all decrees of the court of probate ; and allows appeals, in some mode or other, in all other cases, and from all other courts, to the superior court, where the title of land is to be definitively settled, or is in question. I see no reason to believe, that the legislature intended to make this case an exception.

I would, therefore, advise the superior court, that the appellants be permitted to prove the distribution to be unequal and unjust ; and that the evidence of the death of the former distributors was admissible ; and that fact being proved, the decree of the court appointing other distributors to set out the reversion in the dower of the widow, was correct.

The other Judges were of the same opinion.