BORDEAUX, RESPONDENT, *v.* BORDEAUX, APPELLANT.

(No. 1,787.)

(Submitted February 9, 1904.  Decided February 26, 1904.)

*Divorce—Desertion—Adultery — Condonation—Suit Money—Allowance—Abuse of Discretion—Recrimination—Trial by Court—Issues—Findings—Appeal—Implied Findings.*

1. Where, in an action for divorce, plaintiff alleged that his wife had been guilty of desertion and adultery, which she denied, and, on her application for suit money and attorney's fees, it appeared that plaintiff had property of the value of $69,000, and it was uncontradicted that a much larger sum than $200 was necessary to enable defendant to properly prepare her defense, together with her cause of action for a divorce on the ground of desertion and extreme cruelty, alleged in a cross-bill, an order denying defendant's application for attorney's fees, and allowing only $200 for suit money, was an abuse of discretion.

2. Where, in a suit for divorce on the ground of adultery, plaintiff's wife, by way of recrimination, alleged cruelty and desertion on the part of plaintiff, which he denied by replication, and the jury specifically found against defendant on all the issues in the case, but the court adopted only certain findings returned by the jury—all of which related to the adultery of defendant, and, of its own motion, set aside and refused to adopt all the further findings, and granted plaintiff a divorce, without making any express findings on the issues raised by defendant's answer,—the judgment, on appeal, will be reversed as not supported by the findings, notwithstanding the prevalence of the doctrine of implied findings. ·

3. *Held,* in an action for divorce on the ground of a wife's adultery, that where plaintiff's witnesses informed him of such adultery within two or three days after its occurrence, on December 23, 1897, and, notwithstanding such knowledge, he continued to live with defendant as his wife until January 23, 1898, occupying the same room with her, in which there was but one bed. etc., he thereby condoned her offense, and was not entitled to a divorce by reason thereof.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

ACTION by John R. Bordeaux against Ella F. Bordeaux. From a judgment in favor of plaintiff, and from an order over-ruling a motion for a new trial, defendant appeals.   Reversed.

*Mr. Jesse B. Roote, Mr. William A. Clark, Jr.,* and *Mr. John J. McHatton,* for Appellant.

*Mr. B. S. Thresher, Messrs. Stapleton & Stapleton,* and *Mr. Peter Breen,* for Respondent.

As to the contention of the appellant, that the trial court erred in not making a special finding of fact as to all the allegations of the appellant's cross-bill, it is only necessary that we look for a minute into the record.   Beginning with line 10 of page 711 of the record and running to line 10 of page 712 we find motions were made by both parties as to the findings, but nowhere do we find the motion, nor at any place in the statement or bill of exceptions do we find what findings were requested by the defendant and appellant.   We simply find in the statement and bill of exceptions the findings adopted, but no request for findings, nor any rejected findings are to be found therein.   At line 3 of page 712 of the record we find the court using this language in connection with the adoption of findings, "and the court rejects the finding of cruelty of plaintiff to defendant and further adopts the general verdict of the jury for plaintiff and against the defendant."   From this it would appear that a finding based upon the defendant's charge of cruelty was by the court rejected or found against the said defendant, but this court is left to speculate as to what such finding was. Nor does it appear at any place in the statement or bill of exceptions that the defendant requested a single finding upon any particular issue of fact.   Sections 1114 and 1115, Code of Civil Procedure, definitely state the procedure to be followed in order to have a question of this kind reviewed by this court, and the mere fact that there appears to have been filed with the clerk of the trial court at some time a request for special findings by

the jury, and that the same has by said clerk been certified to this court is by no means a compliance with the provisions of the above sections. Nor can such be considered as part of the judgment roll. Section 1196, Code of Civil Procedure, gives the matters to constitute a judgment roll, and requests for findings are not mentioned. Besides this court has decided that such questions can only be considered when brought up in bill of exceptions or statement. (*Galligher* v. *Cornelius,* 23 Mont. 27; *Yellowstone Nat'l Bank* v. *Gagnon,* 25 Mont. 271.) In the absence of a compliance with the requirements of the sections referred to, the presumption obtains that the court impliedly found for the prevailing party upon the issues of fact not covered by the express findings. Unless the party seeking a reversal has followed the course prescribed by Sections 1114 and 1115, the express findings are supplemented by implied findings. (*Yellowstone Nat'l Bank* v. *Gagnon, supra.*)

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court:

Appeal from judgment and order overruling motion for new trial.

The action was commenced by John R. Bordeaux, as plaintiff, against Ella F. Bordeaux, as defendant, for a divorce on the ground of desertion, by filing a complaint on January 26, 1899. Defendant answered, denying all the material allegations, and, by way of "recrimination, defense, counterclaim and cross-complaint," set forth a claim for a divorce on the ground of desertion and extreme cruelty. To this answer plaintiff filed a replication denying all the material affirmative allegations. On February 25, 1899, plaintiff filed an amended complaint, in which was set forth desertion as one cause of action, and, as another, several specific, and many general, acts of adultery on the part of the defendant. Further reference to this first amended complaint is immaterial, because it was again amended as hereinafter set forth.

Defendant filed a demurrer to this amended complaint, which was sustained by "consent," and ten days allowed to file a further amended complaint.

On March 3, 1899, a second amended complaint was filed, which consisted of two causes of action: First, desertion; and, second, adultery. The specific adulterous acts set forth were that the defendant committed adultery with an unknown person on the 1st day of September, 1891, in the "Old Owsley Building;" also with Lyman A. Sisley on the 23d day of September, 1897, "at a house on the west side of Missoula Gulch, which was then in an unfinished condition, and is now numbered 825 West Broadway street, in Butte City;" also with Lyman A. Sisley on the 2d day of October, 1897, "on the west side of Missoula Gulch, in a new building, which was then in an unfinished condition, and is now numbered 825 West Park street, Butte City;" also with Lyman A. Sisley during the month of August, 1897, "in a lodging house on the east side of Main street, in Butte City, * * * known as and called the 'Red Boot Lodging House';" also on the 30th day of November, 1896, with Lyman A. Sisley, "in room number 27 in what was then, and is now, known as the 'Weyerhorst Block';" also with Lyman A. Sisley on or about the 25th day of November, 1897, at plaintiff's residence. This complaint contains some five or six other allegations, charging adultery generally, at different times and places, and with Lyman A. Sisley, or persons unknown.

Defendant demurred to this second amended complaint. This demurrer was overruled. Defendant then filed her answer, denying each and every material allegation of the complaint, and alleging, "by way of recrimination, defense, counterclaim and cross-bill," as a ground for divorce, first, the desertion of the defendant; second, his extreme cruelty. To the affirmative matter set forth in this answer, plaintiff filed a replication denying all the material allegations thereof. Upon these pleadings the cause came on for trial on the 16th day of August, 1901, before the court and a jury.

1.   Suit Money and Attorney's Fees.   The first error urged is based upon the action of the court in entering the order of August 17th on the hearing of defendant's application for attorney's fees and suit money.   This application was filed on August 5th.   The court made an order, returnable August 10th, requiring plaintiff to show cause why the application should not be granted.   On this return day the court refused to hear the application, for the reason that the proper notice had not been entered in the motion book.   On August 17th, the time the order was granted, the trial was proceeding.   The court refused to consider the application as to attorney's fees, and refused to grant plaintiff any greater sum than $200 for suit money.   By the uncontradicted showing made upon this application, a much larger sum than $200 appeared to be necessary to enable the defendant to properly prepare and present to the court her defense, and her own cause of action against the plaintiff, as alleged in her answer.   The $200 was allowed by the court "to pay witness fees for witnesses who might attend upon the trial in behalf of the defendant," and nothing was allowed to pay the other necessary expenses of properly preparing her case for trial, and presenting the same.   The court refused to consider the application as to attorney's fees "until after the case had been tried and determined."

We are of the opinion that the court abused the discretion vested in it, in refusing to make a larger allowance for "suit money," and in refusing to consider the application as to attorney's fees.   As said by the Supreme Court of California in the case of *Sharon* v. *Sharon*, 75 Cal. 1, 48, 16 Pac. 345, 366: "The discretion of the court is a *legal* discretion, to be reasonably exercised.   'Abuse of discretion' in making such orders does not necessarily imply a willful abuse or intentional wrong.   In legal sense, discretion is abused whenever, in its exercise, a court exceeds the point of reason, all the circumstances before it being considered."

The defendant stood accused of various acts of adultery—one of the most heinous offenses that could be charged against

any woman of respectability. The dates of the offenses charged were, for the most part, some years prior to the trial of the suit. It was important, therefore, that the defendant investigate the facts in connection with these charges, ascertain the witnesses in her behalf, and generally to so prepare her case as to meet the charges made in the complaint, and prepare her case against the plaintiff for trial. From her showing, which, as said before, was uncontradicted, it appeared that she was without funds of any kind; and the court had already found, upon a former application for alimony, expenses, etc., that the plaintiff was possessed of property exceeding in value the sum of $69,000. This order of the court was introduced as a part of plaintiff's showing on this application.

We are therefore satisfied that the allowance made was so grossly inadequate, under all the circumstances, that it was, in effect, a denial to her of the funds necessary to be expended in the proper preparation and presentation of her case to the court.

2. Recrimination. The complaint, as above stated, charged the defendant with two statutory grounds of divorce, viz., desertion and adultery. The answer denied the allegations of the complaint, and set up, "by way of recrimination," that the plaintiff was guilty of extreme cruelty and desertion—two other statutory grounds of divorce. The plaintiff filed a replication to this answer, thus raising issues upon its allegations. Plaintiff's cause of action on the ground of desertion was abandoned at the trial, but all the other issues were tried. The jury, in reply to requests for special findings submitted by the defendant, answered that the defendant did commit adultery, that the plaintiff was not guilty of extreme cruelty, and that he did not desert the defendant. In reply to special findings submitted by plaintiff, the jury found that defendant did commit some of the offenses of adultery charged. After the jury had rendered their verdict, written application was made to the court by plaintiff to adopt the findings of the jury, and by the defendant to disregard the findings returned against her, and to make other and further findings. The court adopted findings 1, 2, 3,

4, 5 and 7 returned in favor of plaintiff, all of which related to the adultery of defendant, and, at his request, made a further finding to the effect that plaintiff had been a resident of the state of Montana for five years last past. The court then, of its own motion, set aside and refused to adopt all the further findings of the jury.

Section 160 of the Civil Code provides that divorce must be denied upon a showing of recrimination.

Section 170 of the Civil Code defines "recrimination" as "a showing by the defendant of any cause of divorce against the plaintiff."

By Section 132 of the Civil Code, extreme cruelty and desertion are grounds of divorce.

As above stated, the answer set forth, "by way of recrimination," these two grounds of divorce as against the plaintiff. The jury found specially against defendant on both grounds. The court set aside these findings, and denied defendant's application to make findings on the other issues in the case. The conclusion resulting from this action of the court is apparent, viz., that no findings were made upon the recriminatory allegations in the answer. In such case the judgment cannot be maintained. These issues were material, and the findings must cover all matters at issue made by the pleadings. (*Cassidy* v. *Cassidy,* 63 Cal. 352.)

The above cited case is peculiarly in point. The action was by the husband for divorce. The wife denied the allegations of the complaint, and set up the defense of extreme cruelty. The court found that all the material allegations of plaintiff's complaint were true, and rendered judgment for the husband. No finding was made by the court upon the issues tendered by the wife as to cruelty. The court say: "It is well settled in this state that the findings must respond to all the material issues made by the pleadings;" (citing *Swift* v. *Canavan,* 52 Cal. 417; *Billings* v. *Everett,* 52 Cal. 661; *Phipps* v. *Harlan,* 53 Cal. 87.) That court held that the defendant may allege and prove facts

constituting cause of divorce against plaintiff in bar of the plaintiff's cause of action, and the averment of the facts constituting such recriminatory defense, and the denial thereof by plaintiff, create a material issue, upon which the court must find.

If these issues had been found in favor of defendant, plaintiff would not have been entitled to a divorce. (*Nagel* v. *Nagel,* 12 Mo. 53; *Church* v. *Church,* 16 R. I. 667, 19 Atl. 244, 7 L. R. A. 385; *Ribet* v. *Ribet,* 39 Ala. 348; *Pease* v. *Pease,* 72 Wis. 136, 39 N. W. 133; *Reading* v. *Reading,* (N. J. Ch.) 5 Atl. 721; *Conant* v. *Conant,* 10 Cal. 249, 70 Am. Dec. 717; *Estill* v. *Irvine,* 10 Mont. 509, 26 Pac. 1005.)

We are aware that the doctrine of implied findings prevails in this state, but such doctrine cannot apply to this case. The jury made special findings upon the issues raised by defendant's answer, and the court below set them aside on its own motion.

If any findings upon these issues are to be implied from the above stated facts, such findings would be contrary to those of the jury and in favor of the defendant, thus defeating the judgment for plaintiff.

Therefore, we must conclude that the judgment must be reversed on this ground.

3. Condonation. Section 160 of the Civil Code provides that a divorce must be denied upon a showing of condonation.

Section 163 of the same Code defines condonation as being "the conditional forgiveness of a matrimonial offense constituting a cause of divorce."

Section 164 provides: "The following requirements are necessary to condonation: (1) A knowledge on the part of the injured party of the facts constituting the cause of divorce. (2) Reconciliation and remission of the offense by the injured party. (3) Restoration of the offending party to all marital rights."

The verdict of the jury in this case finds the defendant guilty of adultery on the 23d day of December, 1897, and at other

dates prior thereto.  The witnesses who testified to the adulterous act of December 23, 1897, testify that within two or three days after the occurrence of this act they informed plaintiff, who admits that he received such information.  That he must have believed it is sufficiently evidenced by the fact that he called the same persons, as his witnesses upon the trial, to make proof of the allegations of the complaint.  Yet he continued to live with the defendant until the 26th day of January, 1898, and occupied the same room with her, in which there was only one bed.  He denies that he cohabited with his wife after the receipt of this information; but she, on the other hand, testifies that they did live together, and occupied the same room and bed. Another witness testified that he spent two nights at plaintiff's house, and during those two nights the plaintiff and defendant occupied the same room and bed.  All the offenses found by the jury against the defendant occurred long prior to the time of the actual separation, and the record discloses that the plaintiff had full knowledge of the existence of the facts to which the witnesses would testify, and, with that knowledge, cohabited with the defendant until the 26th day of January, 1898.

Under these circumstances, and under the authorities, it is very clear that the plaintiff condoned the offenses of adultery which he had charged in his complaint, and therefore was not entitled to a decree of divorce.  (*Marsh* v. *Marsh,* 13 N. J. Eq. 281; *Delliber* v. *Delliber,* 9 Conn. 233; *Turnbull* v. *Turnbull,* 23 Ark. 615; *Horne* v. *Horne,* 72 N. C. 530; *Farmer* v. *Farmer,* 86 Ala. 322, 5 South. 434; *Phillips* v. *Phillips,* 91 Ga. 551, 17 S. E. 633; *Todd* v. *Todd,* (N. J. Ch.) 37 Atl. 766; *Tilton* v. *Tilton,* 16 Ky. Law Rep. 538, 29 S. W. 290.)

In *Marsh* v. *Marsh, supra,* it is said:  "Condonation may be implied if the husband, after reasonable knowledge of the infidelity of his wife, continues to admit her as the partner of his bed.  Poynter on Mar. & Div. 232.  *  *  *  Reasonable knowledge may be said to have been had when information of a fact is given by credible persons, speaking of their own knowledge, particularly if the same facts be afterwards proved, and

they become instrumental in the proof. Poynter on Mar. & Div. 232; *Dobbyn* v. *Dobbyn, Ibid.* 233, note 'z.' "

The adultery charged in the complaint in the foregoing action was alleged to have been committed from March to July, 1857, and the act more especially relied upon was charged to have occurred the 23d day of March, 1857. The plaintiff was told all about this prior to July 4, 1857, by a witness whom he afterward put on the stand to prove it, and suit was commenced January 6, 1858, and, during all the time between receiving knowledge of the act and commencing the suit, plaintiff continued to cohabit with his wife as if nothing had occurred. They lived in the same room in a boarding house. The court, in regard to these facts, uses the following language: "It appears, then, as early as July 4, 1857, the petitioner had not only probable knowledge, but, if his witness is truthful, certain information, of his wife's guilt. He had the very information from the lips of the same witness upon which he asks this court to pronounce his wife guilty. He, at least, must be presumed to have deemed the witness credible (for he has placed her on the stand), to sustain his case."

In *Turnbull* v. *Turnbull, supra,* the court say: "He had the right to forgive her or not, as he saw fit, but, having once forgiven, it is not his privilege to retract his pardon, to subserve the purposes of his passion, his caprice, or his interest. He has passed an act of oblivion which heals all, and, in the eyes of the law, for all time to come."

In *Horne* v. *Horne, supra,* the Supreme Court of North Carolina uses the following vigorous language: "A husband who admits his wife to conjugal embraces after he knows that she has committed adultery is looked on as a disgraced man, 'a cuckold, a beast with horns,' "

In *Todd* v. *Todd, supra,* the court uses the following language: "If a man—a stranger—and a woman had occupied the same room and the same bed for a whole night, would any court accept his statement that he did not take off his clothes

as a refutation of the natural inference which would be drawn that the transactions between those people were such as would justify a belief in a connubial, or at least a copulative relation? But when this husband got into bed with that wife he got into bed with a woman whose person he had enjoyed. He felt entirely free to make any approaches to her that he might like, and obviously he was not repelled by the knowledge of her wrongdoing, else he would not have been there at all; so that he must be presumed to be a person who came to that degree of intimate relation with that woman on that occasion, not deterred by his knowledge of her previous unfaithfulness, else it is impossible to believe that he would have been in such a place with her. * * * A manly character would in all probability never have been found in the same house with the woman who had committed such an offense, save to denounce her; but this man was able to occupy not only the same house, but the same room and the same bed, with his unfaithful wife."

In *Tilton* v. *Tilton, supra,* Chief Justice Pryor says: "The judgment in this case against her, establishing a want of chastity, has taken from her a hitherto pure and spotless character, that took her, as a welcome guest, to her neighbors, that she might ply her needle from day to day, and enjoy the associations of the best and purest women of the village. The facts of this record show this proceeding by the husband to be a merciless assault upon women and virtue, and brand the appellant with infamy and disgrace, when it is apparent, even if the wife was guilty, that the husband sustained his relations with her with a full knowledge of what he claims to be the facts evidencing her guilt, and therefore the chancellor should have dismissed his petition."

We cannot refrain from saying that the record discloses in many instances a most reckless disregard for the truth on the part of some of plaintiff's witnesses, and also a character to some of plaintiff's witnesses which is not enviable, to say the least.

We have directly considered only three important errors upon which the case must be reversed. There are over 100 errors assigned in the brief of appellant, and, after an examination of all these errors and the record, we are of the opinion that a great majority of them are such that if considered would be sufficient to reverse the judgment and order appealed from, but inasmuch as they all pertain, either to the introduction or rejection of testimony, or matters of mere practice which may be avoided on another trial, and as the judgment and order must be reversed and a new trial granted, we do not deem it necessary to further refer to these various errors.

We advise that the judgment and order appealed from be reversed, and the case remanded for a new trial.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order appealed from are reversed, and the cause remanded.

Rehearing granted April 4, 1904.