## PHELPS *v.* PHELPS.

### DIVORCE; CONDONATION.

1. Condonation of marital infidelity may be implied if the injured party,
with knowledge of the infidelity of the other, re-establishes the marital
relation with the accused party; and whether such relation has in
fact been re-established must be determined from the facts and circum-
stances developed by the proof in each case. (Following *Lenoir* v.
*Lenoir*, 24 App. D. C. 160.)

2. Where a husband, while living apart from his wife, and after discovery
of her infidelity, during an illness requested an acquaintance to tell
his wife where he was and that he was ill, and thereupon the wife
came to the husband and remained with him until his recovery, a
period of four or five days, during which time they occupied the same
room, which had but one bed, it was *held*, in a suit for divorce by the
husband upon the ground of such infidelity, that he had condoned her
conduct, and that the lower court had properly dismissed his petition.

No. 1648. Submitted December 6, 1906. Decided January 8, 1907.

HEARING on an appeal by the petitioner, a husband, from a
decree of the Supreme Court of the District of Columbia dis-
missing a petition for divorce.                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. J. Altheus Johnson* for the appellant.

*Mr. George F. Havell* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

Appellant, Elmore M., as petitioner below, was divorced from appellee, Desdemona G., on the ground of adultery. Shortly thereafter, and during the term at which said decree of divorce was entered, the court, upon motion of appellee, reopened and re-referred the cause to an examiner of the court for the taking of testimony on the question of condonation. Such testimony was taken, and a hearing had thereon, which resulted in the dismissal of the original petition.

The sole question here is whether the court erred in holding that the established facts amounted to a condonation by the husband of the alleged infidelity of his wife.

The couple were married in this city in December, 1898, Mrs. Phelps then being only about fifteen years old. They lived together until June, 1904, and the petition for divorce, alleging acts of infidelity in May and June, 1904, was filed by the husband in March, 1905. The alleged acts of infidelity were discovered by a detective whom Phelps had employed to watch his wife, and who reported his discoveries to Phelps at the time or immediately after they were made.

It is a familiar and well-settled principle in English and American courts, that condonation may be implied if the injured party, with knowledge of the infidelity of the other, reestablishes the marriage relation with the accused party; and whether such relation has in fact been re-established must be determined from the facts and circumstances developed by the proof in each case. *Lenoir* v. *Lenoir,* 24 App. D. C. 160; 9 Am. & Eng. Enc. Law, pp. 822–824; *Maglathlin* v. *Maglathlin,* 138 Mass. 299; *Turnbull* v. *Turnbull,* 23 Ark. 615; *Burns* v. *Burns,* 60 Ind. 259; *Doe* v. *Doe,* 52 Hun, 405. 5 N. Y. Supp. 514; *Reynolds* v. *Reynolds,* 34 How. Pr. 346; *Marsh* v. *Marsh,* 13 N. J. Eq. 281; *Delliber* v. *Delliber,* 9 Conn. 233.

The facts in this case, briefly stated, are as follows:

About the middle of July, 1904, and after Phelps had been told all about his wife's conduct, he was taken ill, "threatened with a condition of appendicitis," as the doctor expressed it.

A Mr. Burke, who called to see him the day after he became ill, testified that: "He asked me would I do him a favor. I said I would, and he asked me would I go down to somewhere on D street, I think it was,—I don't remember now,—and tell his wife he was rooming at 226 G street Northwest, and he was sick. That is all, that is all he told me to tell her." Witness saw Mrs. Phelps as requested, and she immediately responded to her husband's implied request, by going to him, and remaining with him until he had fully recovered, a period of four or five days, when, for some reason not disclosed, she left.

Miss Curry, at whose house Phelps was rooming when he was taken ill, testified that while Mrs. Phelps was with her husband they occupied the same room, and presumably the same bed, as there was only one bed in the room, and Mrs. Phelps had no other place to sleep; that "they seemed to be very friendly."

Dr. Chamberlain, who attended Phelps, in testifying as to the relation between husband and wife, said that he "understood Mrs. Phelps was Mr. Phelps's wife," and that he "saw nothing to indicate anything else;" that he saw nothing to indicate that perfect harmony did not exist between them. The doctor was questioned "in regard to Mr. Phelps's sickness in so far as it affected his physical ability to cohabit with his wife," and answered: "I haven't anything to say about that; I think that is the only way to answer it."

The circumstances, we think, all indicate that when this husband sent for his wife the bitterness had left his heart, and he had determined, in the event she responded to his overtures, to forgive and condone the past. The evidence shows that he had proper medical attendance, and that he was not without friends; moreover, he might easily have secured the services of a nurse had he desired to do so, but his thoughts evidently then centered on his wife, and he sent for her, not, as counsel now contends, solely because he wanted a nurse, but because she was his wife. They were constantly together, day and night, for nearly a week, and the evidence clearly indicates that a reconciliation took place.

We are unwilling to assume from all the evidence that this husband in sending for his wife was actuated by the selfish and hypocritical motive of securing her gratuitous services while he needed them.   We are unwilling to assume that this man, when his wife returned to him, received her with open arms, accepted her ministrations, and shared with her his couch, intending all the while to cast her off when her services were no longer necessary for his comfort.   We prefer rather to judge him by higher standards, and assume from the evidence that he intended, in the event his wife responded to his call, to condone the past and give her another chance, and that he did in fact do so, and that subsequent and unhappy misunderstanding caused another separation.

The decree appealed from is affirmed, with costs.

*Affirmed.*