# WILLIAM F. FLAGG

*v.*

# JAMES G. STOWE.

1. PARTNERSHIP—*whether it exists.* Where two or more parties agree to form a corporation, some putting in machinery and patents, and others money and labor, but no corporation is formed, by reason of a failure to comply with the statute, if the parties are entitled to share in the profits and losses, it will constitute a *quasi* partnership, although the title to the property put in, whether real or personal, may not be changed.

2. SAME—*ownership of property—liability for losses.* Where an association is formed, not under the statute, for manufacturing purposes, by which one is to furnish machinery, etc., and another a patent, and the third money and advances to put the business in operation, and to convey lands, the persons so operating together will not become jointly entitled to the property itself, but simply to its use, except as to the money advanced. If the party furnishing the machinery withdraws, and files his bill for an account and a sale of the property, he will be liable to account to the party advancing the money, for any loss that has occurred.

3. In case of an association for manufacturing purposes, not incorporated, in the absence of an agreement to the contrary, each will be liable, in equal proportions, for any loss that may be sustained, but if, by the articles of association, they are to share in the profits in proportion to the stock each puts in, then the loss must be shared in the same manner.

4. SAME—*rule for accounting.* Where one partner puts into the firm simply the use of machinery, and another a patent right, and another advances money to put the business in operation, and agrees to convey land, on bill for an accounting and for a sale of the property, each party should be allowed for all money advanced, a fair and reasonable rent for his property employed, up to the time of filing the bill, and for labor performed by each during that period, and the balance struck accordingly. It is error to allow a certain per cent for the use of the machinery. It should be the fair value of its use as situated, and not what it might have been worth if used at some other place.

5. SAME—*lien for advances and losses.* Where one partner simply puts into the firm the use of his machinery or other personal property, and the other advances money and assumes liabilities, the latter, being in possession, will have the right to retain the property until he is reimbursed for any excess paid by him, and for indemnity against outstanding liabilities.

6. CHANCERY — *rule on error different from cases at law.* A case in chancery will be reviewed in this court on appeal or error, on the record, just as it should have been in the court below, and no presumption prevails in favor of the finding, as in trials at law.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Mr. E. M. PRINCE, and Messrs. ROWELL & HAMILTON, for the plaintiff in error.

Messrs. H. & J. D. SPENCER, and Messrs. WILLIAMS, BURR & CAPEN, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Plaintiff and defendant in error, and Mathewson, agreed to, and made an effort to, form a joint stock company, defendant in error to put in, at $25,000, a quantity of machinery, patents, etc., which had been in use in Rhode Island; plaintiff in error to erect a certain building, worth $7000, and convey to the company three acres of land, at $1000 per acre, and, also, to put in $10,000 in money, as his portion of the capital stock, and Mathewson to put in certain patents he owned, and which they desired to use in manufacturing articles by the company, at $10,000; that the working capital should be $20,000, which might be taken by other parties.

When the case was previously before this court, it was held, that the parties, by failing to conform to the requirements of the statute, did not organize an incorporation. The parties, signed their articles of association on the 15th of August, 1870, but the agreement to form the proposed corporation was verbally entered into about the 1st of March of that year, and a written agreement was subsequently executed, embodying the terms of the contract.

In October, plaintiff in error had so far completed the building that the machinery of defendant in error was unpacked, and, under his supervision, was placed therein, and it appears that a number of men were employed for several weeks in placing it in position. Plaintiff in error paid freight on this machinery from Rhode Island, and for drayage, etc., and paid defendant salary, and paid for printing, etc. He paid hands and other expenses, as he claims, amounting to $10,000, neither defendant in error nor Mathewson paying anything.

Differences having arisen as to the management of the concern, defendant in error withdrew, and demanded his machinery, on the 1st of May, 1871, but plaintiff in error refused to deliver it until he should be reimbursed his outlays. Thereupon, defendant in error filed this bill, praying for an account and a sale of the property, and a distribution of the proceeds.

After the case was remanded, the court below referred it to the master to state an account, which he did, but exceptions were filed, and disallowed by him, but sustained by the court, and it was referred back to the master for a further report. He made and returned a second report, after overruling exceptions filed to it, which were disallowed by the court, and defendant brings the case to this court on error.

It is urged that the court should have heard the cause and determined who was in fault in failing to proceed under the agreement. The agreement failed because of the non-compliance with the statute, in the effort to organize the incorporation. That failing, it became the duty of the parties to come to an accounting among themselves as to advances and expenditures they had severally made. Plaintiff in error had advanced a large sum of money and defendant had put in his machinery, and they had all contributed labor, time and skill towards the enterprise. There was a *quasi* partnership, because there was, in law, a right to share in profits and a liability to share in losses. It is true, the title to the property employed, whether real or personal, was not changed. The three persons operating together did not become jointly entitled to the property itself, but simply to its use, unless it was the money ad-

vanced.  If, in manufacturing machinery, plaintiff in error advanced money to carry on the business, and a loss ensued before defendant in error withdrew and filed this bill, the three were liable to share the loss, and, if there was no agreement to the contrary, it should be in equal proportions; but if, by their articles of association, they were to share the profits in proportion to the stock each put in, then the loss should be shared in the same proportion.

We are aware of no rule which would, in a case like the present, impose all the loss on one of the parties.  No reason is perceived, in law or equity, why this should be done, and it seems to us that every principle of natural justice forbids it. We may readily suppose that, during the short period the parties were acting under their supposed charter, no profits were made, but we have reason to suppose there were none, and if there were none, there must have been losses.  In fact, a consideration of the evidence satisfies us there were losses, as there had been large outlays and expenditures on account of the enterprise.  The evidence shows that plaintiff in error had paid freights on the machinery, paid for putting it in place, and salary to defendant in error.  Each party, then, should be allowed for all money advanced, a fair and reasonable rent for his property employed, up to the time this bill was filed, and for labor performed by each during that period.  If, then, on adding these various sums together, the aggregate showed the amount of the loss, then that sum should be apportioned to each according to the amount of stock each had agreed to take in the corporation, and those found to be in arrear in advances be decreed to pay to those having advanced the greater sums, until they were all made equal in their losses, in proportion to the stock they were to have taken.

Defendant in error should, then, be allowed a fair and reasonable rent for the use of his machinery as it has been situated, against plaintiff in error, and that should be deducted from the amount of loss defendant should pay plaintiff in error, and if the rent is less than the loss thus to be paid, then a decree should be rendered for the amount, against defendant

in error, for the balance, or, if the rent should be greater than the amount of loss defendant in error should thus pay, then a decree for such balance should be rendered against plaintiff in error.

In stating this account, the master has proceeded on an entirely wrong basis, as is seen from what we have said above, and the basis upon which defendant in error was allowed for the use of his machinery was altogether wrong. It should have been no more than the value of its use, after deducting taxes and insurance, if any, as it was situated in the "Empire Machine Works." The question was, what would have been a fair rental value, to be used at the place and in the manner it was employed. But it was assumed that capital invested in real estate should yield at least ten per cent per annum, and capital invested in machinery should yield fifteen per cent. From observation, we are strongly inclined to believe that this estimate is too high. After paying taxes, making repairs, and deducting labor and the proper allowance for other capital to render either the real estate or the machinery productive, they certainly do not, on an average, yield near such a percentage. It is said the increase of the national wealth is not exceeding three per cent per annum, and a large, if not the larger, portion of it is produced by real estate and machinery used in connection with labor and capital. Hence, the theory of the master in making this estimate was wrong. He should have heard proof as to what it would have rented for, or what its use could have been made actually worth, situated as it was. It is urged, however, that it might be shown to be worth more at other points than at Bloomington. If this is true, it should not be the rule in estimating the value of its use. If defendant in error desired to obtain the higher value at such places, he should have paid defendant in error his proportion of the loss, and have thus procured the possession of the machinery. It is, however, said, plaintiff in error had no lien on the property. It was placed in his possession, and, as defendant in error had no other means, as we infer, to pay the amount for which he was liable for losses, plaintiff in error was, under the circum-

stances, authorized to hold it to indemnify himself against further loss, until he should be paid.

The amount allowed for the use of machinery was excessive. If the profits of such a factory, after deducting for labor, skill, capital necessarily employed in operating it, the taxes, insurance, repairs and unavoidable expenses, had been three times the amount of the rent allowed, then such business is profitable beyond anything that is known in business. To have yielded so much for the use of the machinery, after such deductions, the profit on the use of material, or labor, would have been certainly very large. In operating such a business, where there are profits, it is but fair to distribute them to the various sources from which they arise, when an account is taken. We are, therefore, of opinion this allowance was excessive.

It is said that on reviewing a decree, in this court, it will not be disturbed, unless it is manifestly against the evidence; that the same presumptions will be indulged in favor of a decree that are in favor of the verdict of a jury, or the finding of the court on an issue of fact on a trial in a case at law. We are aware of no case which so holds, nor is it supposed any such exists. This court has repeatedly held that a case in chancery, reviewed in this court, will be tried on the record, just as it should have been in the court below, and if so, no such presumptions can prevail. At law, it is the province of the jury to find the facts on oral evidence, and, having the witnesses before them, they have superior advantages to judge of the weight of evidence, and so of the circuit judge in such trials; but in chancery, causes may be, and usually are, tried on depositions or evidence taken by the master, and the circuit judge has, in such cases, no superior advantage in judging of the weight to be given to the testimony. For these reasons the same rule does not, nor should it, apply on appeal in chancery cases.

For the reasons indicated, the decree of the court below must be reversed, and the cause remanded with directions to

the master to again hear evidence and state an account on the principles indicated in this opinion, and for further proceedings in conformity thereto.

*Decree reversed.*