## MARY PORTER

*v.*

## ROBERT PORTER.

*Filed at Ottawa March 28, 1896—Rehearing denied October 9, 1896.*

1. APPEALS AND ERRORS—*when chancellor's findings will not be disturbed.* The finding of the chancellor in a suit for separate maintenance will not be disturbed, on appeal, unless the evidence clearly preponderates against it.

2. HUSBAND AND WIFE—*what facts are insufficient to defeat separate maintenance.* A qualified notice by a husband that a wife, who has justifiably left him, may return, accompanied with the information that he does not desire her to do so, is insufficient to defeat a suit by her for separate maintenance.

3. SAME—*allowance deemed not excessive on facts shown.* An allowance to a wife of $15 per week as separate maintenance is not excessive, where the husband is an economical business man and has an unincumbered capital of $40,000, and the wife is, by the decree, awarded the custody of their child.

*Porter* v. *Porter,* 58 Ill. App. 670, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

THOMPSON & MCCASLIN, for appellant.

THORNTON & CHANCELLOR, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a proceeding for separate maintenance, brought by Mary A. Porter, against her husband, Robert Porter, in the Superior Court of Cook county. The bill, filed June 14, 1893, charges that in consequence of continued cruel and inhuman treatment, and because of his finally ordering her to leave his house, she became, without her fault, separated from him, and now lives separate and apart from him. The bill alleges that defendant owns

real estate and personal property to the amount in value of $60,000, and prays for maintenance, temporary alimony and solicitor's fees, and that she may have the care and custody of their only child. The answer specifically denies the principal allegations of the bill, and while not denying the amount of property he is alleged to own, says his income from his business, which is that of a liveryman, does not exceed the sum of $1000 per year, and that his net income during the four years of his married life has not exceeded $4000. Issues were formed on the bill and the cause heard on oral testimony. January 28, 1895, the Superior Court entered a decree finding that the complainant was, at and prior to the beginning of this suit, living separate and apart from her husband without her fault; ordering that complainant have the care of the child, and that the defendant pay all costs, including solicitor's and stenographer's fees, incurred by her in the prosecution of her cause. An order for temporary alimony having been previously made, the decree confirms the order so made, and further orders that the defendant pay to the complainant the sum of $780 per year, payable in the sum of $15 per week, commencing on January 5, 1895, and that he continue to pay the sums previously ordered, as temporary alimony until that date. From this decree an appeal was prayed to the Appellate Court for the First District, where the decree was reversed and the bill dismissed, and complainant below now prosecutes this appeal, seeking a reversal of the judgment of the Appellate Court.

Many facts of a most disgusting character appear in the record which are not of controlling importance in this decision and which we gladly refrain from commenting upon.

We have spent much time in the examination of the testimony of the various witnesses introduced upon the hearing, and are convinced that the finding and decree of the Superior Court are in accordance with the weight

of the evidence. The testimony of the complainant certainly fully sustains the allegations of her bill, and conceding that she was in every material fact squarely contradicted by the defendant, we think it can be justly said that she was at least as fully corroborated by the other witnesses as he was. Moreover, the chancellor had the opportunity of seeing the witnesses and hearing them testify, observing their manner upon the witness stand, etc., which has always been regarded by this court as a reason why the finding below should not be reversed except where the evidence clearly preponderates against it. (*Flagg* v. *Stowe*, 85 Ill. 164; *Ward* v. *Ward*, 103 id. 477; *Baker* v. *Rockabrand*, 118 id. 365; *Johnson* v. *Johnson*, 125 id. 510.) To say nothing about the acts of brutality testified to by the wife as establishing extreme and repeated cruelty, within the meaning of the law as held by this court, there is an abundance of proof that for many months prior to the separation the husband's conduct toward her was cruel and heartless, so far as it could be rendered so by making unreasonable demands upon her strength, imposing onerous household duties and labor upon her while in a delicate state of health, refusing to provide her reasonable and necessary assistance, refusing to provide her suitable and proper medical attendance, and, finally, with curses ordering her to seek another home. The evidence, it seems to us, leaves no reasonable doubt as to the fact that when she separated from him she did so upon his demand. An attempt is made to show that he afterwards invited her to return to his house. No one can read the testimony in this regard without being strongly impressed with the belief that it was made not with the view of an honest reconciliation between himself and wife, or with the purpose of leading her to understand that he was willing to atone for his past conduct toward her, but for the selfish purpose of the better protecting himself against this action for separate maintenance. It was, at most, a qualified notice

that she might return, accompanied with the information that he did not desire her to do so.

The only question remaining is, is the allowance to the complainant excessive? The amount of that allowance must, of course, be determined by the needs of the wife and child and their station and circumstances in life, and by the husband's ability to pay. From his own testimony he is shown to possess about $40,000 of unencumbered property, consisting mainly of Chicago lots, some of them covered by houses yielding rent. This amount also includes a livery business which he manages. He says that during their married life (about four years) he was able to rid his property of a heavy incumbrance, taking up his last mortgage (which was for $1500) in November before the separation. Aside from this he supported himself and family, and this, we think, indicates his income to be greater than the amount he names. He appears to be an economical business man, and with an unencumbered capital of $40,000 he is clearly able to pay the allowance fixed by the Superior Court. That the amount is not excessive for the support of the wife and child is also clear.

This cause is very similar in its facts and the principles of law governing it to that of *Johnson* v. *Johnson,* last cited *supra,* in which we held the wife entitled to the relief of separate maintenance.

From the whole record we are satisfied the trial court was justified in entering its decree, and we think the Appellate Court committed error in reversing it. Its judgment will be reversed and that of the Superior Court affirmed.

                                    *Judgment reversed.*