BORDEAUX, APPELLANT, *v.* BORDEAUX, RESPONDENT.

(No. 2,921.)

(Submitted March 9, 1911. Decided March 22, 1911.)

[115 Pac. 25.]

*Divorce—Previous Separation—Reconciliation—Refusal—Desertion—Findings—Duty of Court—Evidence—Good Faith—Intent—Pleadings—Amendments.*

Pleadings—Amendments—Bill of Exceptions—Record—Review.
   1.  An amended pleading supersedes the original one, is therefore no part of the judgment-roll, and can be made a part of the record on appeal only by bill of exceptions, properly settled; hence the action of the court in sustaining a motion to strike certain portions of the answer as originally drawn was not subject to review where the displaced pleading was not so identified.

Equity—Findings—Office of Jury Advisory.
   2.  In an equity action tried by the court sitting with a jury, the office of the jury is advisory only; the judge may adopt or reject their findings or make others conforming to his own views of the evidence.

Same—Divorce—Findings—Duty of Court.
   3.  In a suit for divorce, though tried with a jury, it was the duty of the judge under section 6763, Revised Codes, to make written findings upon all material issues of fact made by the pleadings, whether requested or not.  This duty became imperative where timely request was made, and refusal constituted reversible error.

Same—Evidence—Erroneous Admission—Presumptions.
   4.  In an equity action, though tried with a jury, it may be presumed that the judge in reaching the final conclusion disregarded incompetent and immaterial evidence, admitted over objection.

Evidence—Exclusion—Harmless Error.
   5.  Error in the exclusion of evidence was harmless, where the same matter had theretofore been admitted or subsequently found its way into the record.

Divorce—Separation—Reconciliation—Intent—Evidence.
   6.  In a suit for divorce asked for on the ground of desertion, where plaintiff's wife, who had been living apart from him by mutual consent, refused to accept his invitation to again live with him, testimony as to his intentions with reference to the manner of living he proposed to furnish to defendant in case she returned, was competent to show his good faith in his effort to bring about a reconciliation.

Same—Separation—Consent—How Determined.
   7.  Consent to a separation need not be expressed in words; it may be implied from facts and circumstances occurring at the time it was initiated, as well as from subsequent acts and admissions of the parties.

Same—Separation—Reconciliation—Refusal—Desertion.
   8.  Where a separation has once been established by mutual agreement, express or implied, it will be presumed to continue until one of the parties revokes consent and in good faith seeks reconciliation and restoration; whereupon the party rejecting the overtures thus made is guilty of desertion.

Same—Separation—Consent—Exclusion of Evidence—Error.

9. In an action for divorce in which the issue was whether the parties had been living apart under a mutual agreement of separation, the exclusion of letters written by defendant wife shortly after the separation which showed that it was by consent, was prejudicial error.

Same—Written Evidence—Erroneous Exclusion—Review on Appeal.

10. The supreme court will consider written evidence erroneously excluded by the trial judge but incorporated in the record, as properly before it in finally disposing of an appeal in an equity case under the provisions of section 6253, Revised Codes.

Same—Reconciliation—Good Faith—Question of Fact.

11. Whether a letter written by plaintiff to defendant in a divorce action seeking a reconciliation was written in good faith or induced by threats, contained in one indicted by the latter to the former, to institute certain legal proceedings against him, was a question of fact.

Same—Separation—Reconciliation—Desertion—Evidence.

12. Evidence in an action for divorce sought on the ground of desertion, where the parties had lived apart for some years, *held,* to show that the separation had been by mutual consent, that an offer of reconciliation made by plaintiff husband was made in good faith, that defendant capriciously rejected it, and that therefore she was guilty of desertion, under section 3650, Revised Codes, and plaintiff entitled to the relief asked.

*Appeal from District Court, Silver Bow County; J. Miller Smith, a Judge of the First Judicial District, in and for Lewis and Clark County, presiding.*

ACTION by John R. Bordeaux against Ella F. Bordeaux. From a judgment for defendant and an order overruling a motion for a new trial, plaintiff appeals. Order denying new trial affirmed and decree of divorce reversed, and cause remanded, with directions to enter decree in favor of plaintiff.

*Mr. L. P. Forestell* and *Mr. I. A. Cohen* submitted a brief and a reply brief in behalf of Appellant. *Mr. Forestell* argued the cause orally.

Appellant assigns as error the refusal of the trial court to find upon the issues of desertion; whether plaintiff and defendant were living separate and apart by mutual acquiescence and consent; whether the plaintiff revoked his consent to said separation, and in good faith sought a reconciliation, and offered to restore defendant to all of her marital rights, and whether the defendant willfully refused said offer and deserted plaintiff,

and still continued so to do. These issues were raised by the complaint and denied in the answer. They were material and evidence was introduced thereon. A request for findings upon these issues was regularly made in writing. A party litigant is entitled to a specific finding upon each material issue. (*Quinlan* v. *Calvert,* 31 Mont. 115, 77 Pac. 428.) The court's decree is unsupported by any finding and cannot stand. (*City of Helena* v. *Hale,* 38 Mont. 481, 100 Pac. 611.) Failure of the trial court to find upon a material issue is ground for a new trial. (1 Spelling on New Trial and Appellate Procedure, sec. 253, and cases cited; *Power* v. *Fairbanks,* 146 Cal. 611, 80 Pac. 1075; *Brown* v. *Macey,* 13 Idaho, 451, 90 Pac. 339; *Shively* v. *Eureka, T. G. M. Co.,* 129 Cal. 293, 61 Pac. 939; *Bordeaux* v. *Bordeaux,* 30 Mont. 36, 75 Pac. 524; *Buckner* v. *Davis* (Tex. Civ. App.), 129 S. W. 639; *Patch* v. *Miller,* 125 Cal. 240, 57 Pac. 986; *Kusel* v. *Kusel,* 147 Cal. 52, 81 Pac. 297, 298.)

Defendant admitted that she had an opportunity to test the good faith of the plaintiff's offer of reconciliation, but did not do so because she thought it was in bad faith. "Acquiescence is consent by silence." (*Thomson* v. *Thomson,* 121 Cal. 11, 53 Pac. 403.) The husband may select the home. (Rev. Codes, sec. 3652; *McMullin* v. *McMullin,* 123 Cal. 653, 56 Pac. 554, 140 Cal. 112, 73 Pac. 808.) The question of the good faith of the offer of a home is one of fact. (*Wagner* v. *Wagner,* 104 Cal. 295, 37 Pac. 935; *Olcott* v. *Olcott* (N. J. Ch.), 26 Atl. 469; *Musgrave* v. *Musgrave,* 185 Pa. 260, 39 Atl. 961; *Porter* v. *Porter,* 162 Ill. 398, 44 N. E. 740.) Defendant should have tested plaintiff's professions by acceptance. (*Newing* v. *Newing,* 45 N. J. Eq. 498, 18 Atl. 166.)

The husband is not liable for the wife's support when abandoned by the wife. (Rev. Codes, sec. 3725; *Kessler* v. *Kessler,* 2 Cal. App. 512, 83 Pac. 257; *Isaacs* v. *Isaacs,* 71 Neb. 537, 99 N. W. 268.) A wife is not entitled to separate maintenance where after separation the husband offers to receive her again in his house and to afford her suitable maintenance. (2 Am. & Eng. Ency. of Law, 2d ed., 97, 98, and cases cited.)

*Mr. John J. McHatton* submitted a brief in behalf of Respondent, and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is an action for divorce on the ground of desertion. The trial was by the court sitting with a jury. The jury being unable to agree upon answers to special interrogatories submitted to them, the court discharged them and rendered judgment, dismissing the action, after refusing plaintiff's request for specific findings upon the controverted issues. The plaintiff has appealed from the judgment and an order denying his motion for a new trial.

The parties were married on June 2, 1886, but have lived separate and apart since January 23, 1898. The complaint was filed on March 10, 1909. It contains two counts. In the first it is alleged that the defendant deserted the plaintiff on March 19, 1906; in the second the desertion is alleged to have occurred on March 15, 1907. At the trial the first count was abandoned. As shown by the allegations of the amended complaint and the evidence introduced, plaintiff's theory of the case is that from January 23, 1898, until March 15, 1907, he and the defendant had lived apart by mutual consent, and that on the latter date he in good faith sought a reconciliation with defendant and a restoration of the marital relation, but that she rejected his overtures and has ever since continued to reject them, thus rendering her guilty of desertion.

In her second amended answer the defendant denies that she ever deserted the plaintiff, and alleges that he willfully and without cause deserted and abandoned her, and for more than a year prior to March 16, 1907, refused to live with her. She asks for a decree granting her a limited divorce and requiring the plaintiff to pay her attorney's fee, and to provide for her separate maintenance. In their effort to reach an issue in the district court, the parties amended their pleadings in several particulars, which they deemed material.

When the transcript of the record was filed in this court, counsel for defendant asked leave to file a supplement to it, which he insisted properly exhibited, by bill of exceptions, the action of the court in sustaining a motion of plaintiff to strike from her amended answer allegations deemed by him to be material. Leave was granted, subject to the right of counsel for plaintiff at the hearing to object to the consideration of the supplement as a part of the record. The purpose sought by filing the supplement was to have this court review the action of the trial court upon the motion to strike, under the authority conferred by the statute (Rev. Codes, sec. 7118), and affirm the decree, if satisfied that, on account of the error in sustaining the motion, it ought to be affirmed, notwithstanding any error committed against the plaintiff in other particulars. This supplemental transcript, in addition to copies of the pleadings upon which the trial was had, contains what purports to be copies of the original complaint, the original and first amended answers, and the motion to strike. It has neither a caption nor a conclusion; nor does it contain any recital identifying these papers or any of them. There was filed with the clerk, however, a document of which the following is a copy: "Title of Court and Cause. Bill of Exceptions. Be it remembered that the court did, on the first day of April, 1910, sustain the plaintiff's motion to strike from defendant's second amended answer to which defendant excepted, and then and there prepared and had this her bill of exceptions thereto at the time, which is full, true, and correct. J. Miller Smith, Judge presiding." This document does not purport to bring anything into the record by reference or otherwise. Whether it refers to the motion, a copy of which precedes it, or the other papers, we can but guess. The order sustaining the motion is part of the judgment-roll. So far as it is concerned, it is in the judgment-roll and properly before us. (Rev. Codes, secs. 6784, 6806.) The amended answer at which the motion was directed, together with the motion by which alone the stricken matter could be identified, are not authenticated in any way. The pleading as reformed into the

[1] second amended answer took the place of the pleading as originally drawn, which, because it was thus superseded and displaced, was no longer a part of the judgment-roll or of the record on appeal. (*Raymond* v. *Thexton,* 7 Mont. 299, 17 Pac. 258; *Butte Butchering Co.* v. *Clarke,* 19 Mont. 306, 48 Pac. 303.) It could not therefore be considered a part of the record, unless made such by a bill of exceptions properly settled by the judge. This, as we have seen, has not been done. The conclusion must therefore follow that the only paper before us showing what the action of the court was is the order found in the judgment-roll. Whether it prejudiced the defendant we cannot say, because we have no means of knowing the theory upon which it proceeded or what its effect was. The section of the statute referred to, upon which counsel for defendant would rely, whether applicable to an order made anterior to the trial or not—and we do not decide whether it is—cannot avail him, because the record is not in proper form to give his exceptions material import. The supplemental transcript must therefore be disregarded.

Counsel for plaintiff contends that the decree should be reversed and a new trial ordered because of the refusal of the court to make specific findings. At the time the case was submitted, he not only prepared and submitted written findings, but also had his request for findings entered in the minutes. The refusal by the court to grant the request was clearly erroneous. This is an equity action. The office of the jury was [2] merely advisory. Though they had agreed upon answers to the interrogatories submitted, the result would nevertheless have been a trial by the judge, and the final decision would have been his decision without regard to the action of the jury, for he still had the option to reject these findings and to make others conforming to his own views of the evidence. (*Lawlor* v. *Kemper,* 20 Mont. 13, 49 Pac. 398; *Power* v. *Lenoir,* 22 Mont. 169, 56 Pac. 106; *Wetzstein* v. *Largey,* 27 Mont. 212, 70 Pac. 717.)

Whether request was made for findings or not, it was the duty [3] of the judge to make them. The statute declares: "Upon

a trial of a question of fact by the court, its decision or findings must be given in writing and filed with the clerk within twenty days after the case is submitted for decision." (Rev. Codes, sec. 6763.) This command is clear and specific, requiring no interpretation. It is true that another section (6766) declares that "no judgment shall be reversed on appeal for want of findings at the instance of any party who, at the close of the evidence and argument in the cause shall not have requested findings in writing and had such request entered in the minutes of the court. * * * " Even so, the duty to make findings becomes imperative when timely request is made, as was done by plaintiff's counsel. (*Estill* v. *Irvine,* 10 Mont. 509, 26 Pac. 1005; *Quinlan* v. *Calvert,* 31 Mont. 115, 77 Pac. 428.) A party failing to make such request cannot allege error because of the omission to obey the command of the statute. Every finding necessary to support the judgment will then be implied. (*Morse* v. *Swan,* 2 Mont. 306; *Ingalls* v. *Austin,* 8 Mont. 333, 20 Pac. 637; *Forrester* v. *Boston & Mont. C. C. & S. Min. Co.,* 21 Mont. 544, 55 Pac. 229; *Vreeland* v. *Edens,* 35 Mont. 413, 89 Pac. 735.) Nevertheless, its plain mandate should be obeyed in every case, by the making of specific findings upon all material issues of fact made by the pleadings, followed by the appropriate conclusion or conclusions of law, indicating the judgment to be entered thereon. (Sec. 6764.) The court having failed to pursue the statute, the plaintiff is entitled to have the decree reversed.

Counsel has assigned many errors upon rulings made in the admission and exclusion of evidence. The evidence admitted over objection was in some instances incompetent or immaterial. [4] The presumption may be indulged that in reaching the final conclusion the court disregarded it. We find no prejudicial error in this regard; nor, except in one instance, was any of the [5] excluded evidence of substantial value. In some instances the evidence offered had already been admitted or subsequently found its way into the record without objection. For illustration: Upon his direct examination the plaintiff was asked

what his intention was with reference to the manner of living he proposed to furnish to defendant if she had returned to live with him. He had theretofore testified, substantially, that he had invited her by letter to return to him, offering and intending at the same time to provide a home for her, and to furnish her such style of living as his means would justify. The court, upon defendant's objection, would not permit him to answer. [6] The evidence called for was material to show plaintiff's good. faith in his effort to bring about a reconciliation, and it was clearly competent for him to state what his real purpose was. (*Finch* v. *Kent*, 24 Mont. 268, 61 Pac. 653; 1 Jones on Evidence, secs. 145, 167; Greenleaf on Evidence, sec. 328c; 1 Wigmore on Evidence, sec. 581.) The statement previously made by him, however, had already supplied the fact sought to be brought out. The error was without prejudice.

Plaintiff had testified that he and defendant had separated by mutual consent at the beginning of the year 1898; that the defendant had since that time been living in Salt Lake City, Utah, and other places, as it suited her convenience. His statement as to her consent was controverted by the defendant, who testified, in effect, that he had sent her from home in opposition to her wishes, and that the separation had begun without her acquiescence and continued so until he had brought an action against her for divorce in 1899. Counsel for plaintiff then offered in evidence several letters written by her to plaintiff from Salt Lake City during the four months immediately following the separation; the purpose being to impeach her testimony and also to corroborate the plaintiff's statement that the separation had been by mutual consent. These letters are all incorporated in the record. We shall not enter into an examination of them in detail. Suffice it to say, that they are all expressive of friendly regard, a full understanding on defendant's part of the cause of the separation, and that it was to be of indefinite duration. There is not in any of them an expression of the least dissatisfaction with anything done by plaintiff looking to a separation, nor of any desire on her part to resume

the old relations. They enter into the details of her daily ,life. They refer frequently to articles of household furniture which she would have him send her, and some of them contain minute directions as to what disposition should be made by him of the other furniture, books, toilet articles, and bric-a-brac which she had left in the home, when he concluded, as he afterward did, to break up housekeeping and rent the family residence.

"A consent need not be expressed in words. It may be implied from the failure of the parties to make overtures after a quarrel; from acquiescence in the separation; from a positive refusal to renew cohabitation after a separation; from a deed of separation; from a desire of plaintiff that her husband should occupy separate apartments; or from other circumstances which show the plaintiff's consent, or that the separation was not [7] against her will. The consent need not be express; it may be tacit, as where the plaintiff is willing and had made no objection. When a separation has taken place under circumstances from which the plaintiff's consent can be inferred, such separation is not wrongful, and will not become so until he has made some efforts to seek the return of the defendant." (1 Nelson on Divorce and Separation, sec. 67.) In the absence of express consent, it is the province of the court to take into consideration all the facts and circumstances occurring at the time the separation is initiated, together with the subsequent acts and admissions of the parties, and from them to determine whether there was such mutual consent as to relieve the one party from the charge of desertion by the other. (*McMullin* v. *McMullin,* 140 Cal. 112, 73 Pac. 808.) Once the relation has been established [8] by mutual agreement, express or implied, it will be presumed to continue until one or the other party revokes consent and in good faith seeks reconciliation and restoration. When this shall have been done by one party, and the other rejects the overtures thus made, the latter is guilty of desertion. (Rev. Codes, sec. 3650; *Howard* v. *Howard,* 134 Cal. 346, 66 Pac. 367.) The theory of the statute is that, where both parties have consented, neither can allege that the act of the other is wrongful,

until consent has been revoked, though each may at the time of the separation have intended to abandon the other. (*Benkert* v. *Benkert*, 32 Cal. 468; *Herold* v. *Herold*, 47 N. J. Eq. 210, 20 Atl. 375, 9 L. R. A. 696.) In view of the conflict in the [9] statements of the parties, these letters, written almost immediately after the separation, furnished convincing evidence that they were living apart by mutual consent. The exclusion of them was prejudicial error.

Having reached the conclusion that the decree must be reversed because of the errors noted, it becomes our duty under the statute (Rev. Codes, sec. 6253) to determine the questions of law and fact presented by the record, upon the whole case, and to make such disposition of it as the circumstances require.

As we have pointed out, the court excluded evidence which we deem substantially material to a determination of the question how the separation of the parties was initiated. If this were in the record merely in the form of an offer to prove by the oral statements of witnesses, we should feel impelled to order a new trial or to remand the case, with direction to the district court to admit the evidence and consider it in making its findings; for it is the exclusive prerogative of that court to determine the credibility of witnesses, and this court may not invade its province. But here the evidence in question is in [10] writing. This being the condition, no question of its credibility arises and this court may as well interpret it and attach to it the import it ought to have as the trial court. We shall therefore regard it as properly before us, and consider the case upon the merits.

The plaintiff and defendant were the only witnesses. As already stated, their testimony was in direct conflict, though neither stated definitely what was said and done at the time the agreement was reached to separate. The letters themselves, however, point to one conclusion only, *viz.*, that they separated by mutual consent. What the impelling cause was it is not now important to inquire; but it appears that scandalous rumors touching the conduct of defendant in accepting attentions from

other men had come to the knowledge of plaintiff, that he was
displeased on account of them, and that both thought that a
separation would be expedient. These rumors, we assume, were
the moving cause. Accordingly the defendant went to Salt
Lake City, Utah, to live with her parents. For four months
letters were exchanged frequently. The plaintiff sometimes re-
mitted money. Suddenly, in April 1898, the exchange of letters
ceased. There is nothing in the evidence to explain this fact;
but in none of the fourteen letters written by defendant during
that time was anything said by way of objection to the separa-
tion, and so far as she referred to the condition of affairs then
existing, she was entirely satisfied with it. She never expressed,
directly or indirectly, any desire to return, and, as has already
been stated, advised the plaintiff as to the disposition of house-
hold effects when he came to rent the house. While denying
that she did acquiesce in the arrangement for separation, the
defendant explained that by the term ''acquiesce'' she meant
that she and plaintiff did not enter into any express agreement
that they would separate.

In January, 1899, the plaintiff began an action in Silver Bow
county against defendant for divorce on the ground of deser-
tion and also adultery. She filed her counterclaim for divorce,
alleging cruelty and desertion. The district court found that
she had been guilty of the adulteries alleged against her, and
entered a decree for the plaintiff. Upon appeal this court re-
versed the decree on the ground that, assuming that the adulteries
were fully established, the plaintiff had condoned them. It
ordered the action to be dismissed, because it was of the opinion
that neither party was entitled to relief. (*Bordeaux* v. *Bor-
deaux,* 30 Mont. 36, 75 Pac. 524, on rehearing, 32 Mont. 159,
80 Pac. 6.) This litigation ended in April, 1905. No exchange
of communications, either by personal interview or by letter,
occurred between the parties after this date, until March 19,
1906. On that date the plaintiff wrote to defendant as follows:
''Dear Ella:

''It has been some time since I have sent you any money to
your support, and for all of the difficulties that there have been

between us, I have always intended to fulfill my duty which I may be under toward you. You will find inclosed in this letter a draft for one hundred dollars, which I hope you will accept and make use of. I wish further to say that as the past trouble has not resulted in gain to either one of us, should you at any time wish to return to Butte to live I will provide you with a suitable home.                     Yours truly,

"JNO. R. BORDEAUX."

The defendant made no reply. On March 13, 1907, she wrote plaintiff as follows:

"Mr. John R. Bordeaux:

"I am here in Butte. I am now, as I have been for the past several years, without any means of support. You have contributed nothing for two years, except the small sum of $100. I desire to remain in Butte. It will be necessary for me to have at least the sum of $500 per month hereafter from you for my support. This will be a meager allowance and one which you can well afford to pay. I expect to be at large expense in obtaining and fitting up living quarters and consequently must require you to pay me at once the sum of $2,500 for this purpose, together with the sum of $500 for the first month's support. In case you refuse to comply I shall undertake to force compliance by legal proceedings. You have neglected the obligation of support long enough. Kindly notify John J. McHatton, my attorney, and pay the money to him.

"ELLA F. BORDEAUX."

To this plaintiff replied:

"Butte, Montana, March 15, 1907.

"Dear Ella:

"I am in receipt of your letter of date March 13, 1907, and in reply to same, I desire to call your attention to my letter of date March 15, 1906, in which I invited you to return to Butte, to live with me, and stating that I would provide you with a suitable home. I have heard nothing from you since that time

until to-day, when I received your letter. In view of which silence I have long ago made up my mind that you did not intend to return to Butte to live with me, and that you had evidently found quarters more to your liking. However, if you desire to return to live with me, I will provide you with such living quarters as my means will warrant. I am not willing, however, to accede to the unreasonable demand contained in your letter, but am always willing to perform my duty as a husband, as I understand it, and as required by the laws of this state. I shall do everything which the laws of this state require me to do, and I will discharge every obligation which the laws of this state require of me because of the relation I sustain to you. And in accordance therewith, I am prepared to provide you with a suitable home and to furnish you with maintenance and support. I am now residing at No. 320 West Broadway, in this city, which is a suitable home for us both, and I will welcome you there, if you choose to return and resume our marital relations. and will provide you with all necessary and proper support and maintenance. Otherwise, I shall consider myself under no further obligation to contribute to your support. Trusting that you will see fit to return home,

"I remain your affectionate husband,

"JOHN R. BORDEAUX."

In reply to this letter defendant wrote a long communication in which she stated that in his letter of March, 1906, plaintiff had failed to ask her to return to Butte to live with him, and charged him with bad faith in writing the one of March 15, 1907, saying that he did it merely for the purpose of protecting himself against his obligation to discharge the duty he owed her under the law to furnish her with support. She also charged him with malignant cruelty toward her, and with desertion, because he had failed to furnish her any support subsequent to March 26, 1898. She stated that the place designated by him as the home to which he invited her was neither desirable nor suitable. She refused to accept his judgment as to what would be a discharge of his legal duties as her husband, saying that,

judging by his past conduct, she preferred to take the judgment of the court upon that subject. The letter concludes: ''I shall, therefore, be forced to reserve all my rights, which I hereby notify you I do, and to insist upon the discharge of your obligation under the law—not as you believe it, or think it, or are willing to suggest it to be—but as it really is. The fault is now, and it always has been, with you. Since you are not willing to accord me my rights I must rely upon the law and its justice for that purpose.''

It was admitted by plaintiff that he had contributed nothing toward the support of defendant after the institution of his action in 1899, except the sum of $100 sent to her on March 19, 1906. It appears that he has during the time since the separation been receiving a gross income of about $500 per month. There is no direct evidence on the subject; but that the defendant has never been in want is a just inference from the fact that she has been living in Salt Lake City, Utah, Seattle, Washington, Portland, Oregon, or at Butte, as it has suited her convenience, with funds sufficient to meet her personal expenses. The source of these funds is not definitely disclosed, but circumstances appearing in the evidence indicate that she has obtained them, either from her parents or from the income from property inherited by her from them since the date of the separation. It was not controverted that out of the income received by plaintiff he has been required to pay his taxes and bear the expense of insurance and necessary repairs upon the property from which it is derived, besides his current personal expenses, and that he was required to meet the expenses of the litigation attendant upon the action for divorce instituted in 1899, including counsel fees for both himself and the defendant. It appears that he contracted on this account a considerable indebtedness, and that for that purpose he put an encumbrance upon some of his property, which still remains. Nor is it controverted that the place designated in his letter of March 15, 1907, as his home, is in a very desirable part of the city of Butte and is such as he can reasonably afford. As a reason why he did not in his

letter designate the home where they were living at the time of the separation, he stated that it was then under a lease for a term of years and was not available. The only objection made by defendant to the home to which he invited her appears to be that, being a suite of rooms in a rooming house, she could not keep servants and live in the sumptuous style that she desired.

There is nothing in any of this evidence upon which a conclusion can be based that either of the parties did anything to change the agreement to separate, in 1898, prior to March 15, 1907. It does not appear that the plaintiff agreed in 1898 to support defendant. Though it be conceded that he did, when his remittances ceased she made no complaint; nor did she upon the cessation of them, or at any time afterward, revoke her consent to remain away or express any desire to return home. Nor did the bringing of the action for divorce, in 1899, work a change in the *status quo*. His effort to dissolve the marriage, met by a counter-effort on her part to do the same, only emphasized the willingness of both to remain apart permanently. The original separation by consent was, therefore, not converted into a desertion by either one by any act of revocation by the other, under the provisions of the statute (Rev. Codes, sec. 3650), until the letter of March 15, 1907, was written by the plaintiff.

It is insisted that this was not in good faith, but was induced [11] by her threat to institute legal proceedings against him. Whether it was written in good faith was a question of fact. (*Wagner* v. *Wagner*, 104 Cal. 293, 37 Pac. 935; *McMullin* v. *McMullin*, 123 Cal. 653, 56 Pac. 554; *Olcott* v. *Olcott* (N. J.), 26 Atl. 469; *Musgrave* v. *Musgrave*, 185 Pa. 260, 39 Atl. 961; *Porter* v. *Porter*, 162 Ill. 398, 44 N. E. 740.) It may be true that the threat of the defendant in her letter of March 13 was the immediate, moving cause of his writing this letter; and it may be also true that he had in his mind the additional purpose of laying the foundation for a charge of desertion against her in case she refused his overtures; but, while these considera-

tions might reflect upon the question of his good faith, they may not be regarded as conclusive that his motive was sinister.

There is nothing in the evidence reflecting upon the real motive, other than plaintiff's declaration that he extended the invitation with the intention that defendant should accept it, and her declaration that she did not accept it, because she did not regard it as made in good faith. It contains no apology for his conduct in charging her with adultery in his former action for divorce; nor is there in it any express plea for forgiveness. But he expressed a willingness for a reconciliation, offered to furnish her a home, to resume cohabitation, and to discharge his duties under the law. If it were necessary that he ask condonation for the past, this was clearly implied. She could easily have tested his sincerity by accepting his overtures, and had he then refused to receive her or thereafter proved derelict, her rights as his lawful wife would not have been prejudiced. But she could not capriciously refuse to accept his offer, because it was not couched in the terms which she would have dictated or preferred. As regrettable as may be the fact, the marriage status is in many cases preserved for no higher motive than that of convenience, and where the parties, alienated by friction in the home due to incompatibility of temper or other cause, have been living apart, it is not to be expected in all cases that, when reconciliation is sought, the overtures will be couched in the most affectionate and apologetic terms. Plaintiff did not seek a personal interview with defendant, but certainly no inducement was held out to him to do so in defendant's letter. This letter not only was a distinct rejection of his overtures, but was tantamount to a declaration of hostility. He was not bound to go further and seek a personal interview or concede the extravagant demand made by her that he should put at her disposal his entire income, besides paying over in cash a large sum of money to furnish a home other than the one which he, as the head of the family, had a right to choose, and which, so far as the evidence shows, was reasonably suitable and within the compass

of his income.   Upon the face of it, his offer of reconciliation was made in good faith.

Upon the whole case the district court should have found that the original separation was by consent; that the offer of [12] reconciliation was in good faith; that it was capriciously rejected by the defendant; and, as a conclusion of law, that the plaintiff is entitled to the relief demanded.

Counsel in their briefs discussed many questions not at all pertinent to the issues involved in this case.   We shall not notice any of them.

The order denying a new trial is affirmed.   The cause is remanded to the district court, with directions to set aside the decree, to find in accordance with the conclusions stated above, and to enter a decree in favor of the plaintiff.

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.