DE CELLES, Respondent, *v.* CASEY, Appellant.

(No. 3,353.)

(Submitted February 7, 1914. Decided February 28, 1914.)

[139 Pac. 586.]

*Conversion — Punitive Damages—Evidence—Insufficiency—Return of Part of Property—Instructions—Jury—Passion and Prejudice—New Trial—Pleadings—Amendments—Discretion —Appeal and Error.*

Pleading and Practice—Amendments—Discretion—Appeal.
    1.   Error in overruling a general demurrer to the complaint in an action for conversion, which the court, over objection, permitted to be amended after the close of the evidence, was not available to appellant, since the pleading as amended took the place of the complaint as it stood at the beginning of the trial, and the integrity of

the judgment is determinable upon the amended and not upon the original pleading.

Same.

2. In the absence of a showing of abuse of discretion, the action of the court in permitting a complaint in conversion to be amended after the close of the evidence so as to render definite and certain the allegation that at the time of the taking of the property, the plaintiff was entitled to its immediate possession, will be approved on appeal.

Conversion—Principal and Agent.

3. Assumption of dominion over personal property of another, inconsistent with the latter's ownership of it, by a corporation through one of its agents amounts to a technical conversion of it by the agent as well the company, if the former was acting within the scope of his employment.

[As to what constitutes conversion of personal property, see notes in 15 Am. Dec. 151; 24 Am. St. Rep. 795.]

Same—Punitive Damages—Evidence—Insufficiency.

4. Evidence *held* insufficient to justify an inference of malice, fraud or oppression in either taking or detaining property in controversy in an action in conversion; hence the imposition of punitive damages, otherwise recoverable under section 6047, Revised Codes, was unwarranted.

[As to measure of damages in action of trover, see note in 24 Am. Dec. 70; 54 Am. Rep. 421.]

Same.

5. Where two employees of a storage company were guilty of conversion in the first instance, the fact that one refused to divulge information in his possession of the other's appropriation of the articles to his own use was not sufficient ground for the exaction of punitive damages from him.

Same—Excessive Verdict—New Trial.

6. Where a verdict is wholly out of proportion to the wrong done and the cause of it and cannot be accounted for on any other theory than that it was measured by the passion and prejudice of the jury, a new trial should be granted.

Same—Excessive Verdict—Jury—Passion and Prejudice.

7. *Held*, under the above rule that a verdict for $1,050 in favor of plaintiff in an action in conversion, $50 of which was for the value of the articles in controversy, and the balance for punitive damages, was so excessive as to warrant a new trial, even after reduction of one-half of the award ordered by the court and accepted by the plaintiff.

Same—Return of Part of Property—Instructions.

8. Where a part of the articles in dispute in an action in conversion was returned to the plaintiff, an instruction that in arriving at a verdict the jury should consider the return thereof in mitigation of damages was proper, while one which permitted a finding for the full value of the goods returned was improper.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Minnie J. De Celles against James S. Casey and Frank A. Shoemaker. From a judgment in favor of plaintiff

and from an order denying a new trial, defendant Casey appeals. Reversed and remanded.

Cause submitted on brief of appellant.

*Messrs. Frank & Cary,* for Appellant.

Where, after the taking of goods from his possession, the owner still claims them as his own and institutes proceedings to recover the actual goods as distinctive from their value, the conversion is waived and no subsequent action by the injured party will lie to recover the value of the goods so taken by the wrongdoer. (*Enos* v. *Cole,* 53 Wis. 235, 10 N. W. 377; *Stout* v. *Fultz,* 117 Mo. App. 573, 93 S. W. 919; *Collins* v. *Lowry,* 78 Wis. 329, 47 N. W. 612; *Weakley* v. *Evans* (Tenn.), 46 S. W. 1070.) Where the property, which is the subject of an action for conversion, is in bailment at the time of the alleged conversion, that fact of itself is sufficient to defeat the action of trover and conversion. (3 Am. & Eng. Ency. of Law, 763; 5 Cyc. 221; *Triscony* v. *Orr,* 49 Cal. 612.)

A mere intent to do an unlawful act is not sufficient to constitute malice or to warrant exemplary damages. (See 12 Am. & Eng. Ency. of Law, 24; *Badostain* v. *Grazide,* 115 Cal. 425, 47 Pac. 118; *Inman* v. *Ball,* 65 Iowa, 543, 22 N. W. 666; *Brown* v. *Allen,* 35 Iowa, 306; *Remington* v. *Kirby,* 120 N. C. 320, 26 S. E. 917.) The only possible wrongdoing of which appellant was guilty was that instead of telling the plaintiff's agents that he knew where some of her property was, he stated that he knew nothing about it. The law in reference to exemplary damages is that they must bear some reasonable relation in size to the actual damages, and the courts have, with great uniformity, cut down exemplary damages where they were so disproportionate as in the case at bar. (*Texas Land & Cattle Co.* v. *Nations* (Tex. Civ.), 63 S. W. 915; *Saunders* v. *Mullen,* 66 Iowa, 728, 24 N. W. 529; *Flanary* v. *Wood,* 32 Tex. Civ. 250, 73 S. W. 1072; *McCarthy* v. *Niskern,* 22 Minn. 90; *International & G. N. R. Co.* v. *Telephone & Tel. Co.,* 69 Tex. 277, 5 Am. St. Rep. 45, 5

S. W. 517; *Buford* v. *Hopewell,* 140 Ky. 666, 131 S. W. 502; *Winterscheid* v. *Reichle,* 45 Mont. 238, 122 Pac. 740.)

May the court in passing on a motion for new trial consider the excessiveness of damages where the notice of intention to move for new trial does not specify "excessive damages resulting from passion or prejudice"? And may it grant a new trial or reduce the amount of the judgment in the absence of such specification in the notice of intention? Under section 657, California Code of Civil Procedure (our section 6794, Rev. Codes), the supreme court of that state has held that between the grounds of "excessive damages resulting from passion and prejudice" and "insufficiency of evidence to justify the verdict," there was substantially no difference. (*Du Brutz* v. *Jessup,* 54 Cal. 118; *Doolin* v. *Omnibus Cable Co.,* 125 Cal. 141, 57 Pac. 774; *Graybill* v. *De Young,* 140 Cal. 323, 73 Pac. 1067; *Swett* v. *Gray,* 141 Cal. 63, 74 Pac. 439.)

No appearance on behalf of Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to recover of the defendants Casey and Frank A. Shoemaker, damages for the conversion of certain personal property of plaintiff, consisting of a set of Werner's edition of the Encyclopedia Britannica and miscellaneous books, sheet music, and articles which may be classed as domestic utensils. The prayer was for a judgment for $500 compensatory and $1,000 punitive damages. The defendants filed separate answers in which they denied generally all the allegations of the complaint. They also alleged affirmatively certain matters as special defenses by way of justification or in abatement, upon which the plaintiff joined issue by reply. At the trial the issues in this behalf were eliminated from the case, the defendants relying exclusively upon the issues tendered by the denials. The jury returned a verdict in favor of the plaintiff for $1,050, of which, as is disclosed by a special finding returned with the

verdict by direction of the court, the sum of $50 was for the value of the property converted and $1,000 for punitive damages. Judgment was entered accordingly. The defendants moved for a new trial. The court made an order granting their motion unless within thirty days the plaintiff would file with the clerk her consent in writing that the amount of the judgment be reduced by deducting from it, as of the date of its rendition, the sum of $500. The written consent was thereafter filed and the judgment was amended accordingly. A new trial was then refused. The defendant Casey has appealed from the order and the judgment as amended. Counsel for plaintiff has not filed a brief. We are thus left to determine the appeals as best we may upon the contentions made by counsel for defendant Casey.

The first contention is that the complaint does not state a cause of action for a conversion. The sufficiency of it was questioned [1] by general demurrer, which the court overruled. At the close of the evidence and at the suggestion of the court, the pleading was amended by striking out one paragraph and amending another so as to render definite and certain the allegation that at the time of the taking of the property in question the plaintiff was entitled to the immediate possession of it. The defendants objected to the amendment at that time, on the ground that it made the complaint sufficient, whereas prior to the amendment it was wholly insufficient and therefore the court could not lawfully permit or direct the amendment. They did not thereafter question the sufficiency of the pleading in any way. Counsel now contends that the court erred in overruling the demurrer. This contention is without merit. The pleading as amended took the place of the pleading as it stood at the beginning of the trial. (*Butte Butchering Co.* v. *Clarke*; 19 Mont. 306, 48 Pac. 303; *Bordeaux* v. *Bordeaux*, 43 Mont. 102, 115 Pac. 25.) If, therefore, it be conceded that the original pleading was open to attack by general demurrer, for present purposes the integrity of the judgment must be determined upon the pleading as amended, and not upon the original pleading. The error, if such there was, in overruling the demurrer cannot now avail the defendant.

But counsel insist that the complaint as amended is insufficient, in that it fails to allege in terms that the defendants converted the property. While the complaint is not a model and would have been open to an objection by special demurrer on the ground of uncertainty,· it is sufficient to withstand an objection to it on the ground of insufficiency, made for the first time in this court.

Counsel contend also that the court had no power to permit or direct an amendment, at that stage of the trial. Wherein the defendants suffered prejudice by reason of it, however, is not pointed out; nor is prejudice disclosed by the record. The [2] power to allow or disallow amendments at any stage of the' trial is within the discretion of the court. (Rev. Codes, sec. 6589.) If no abuse is shown, the court's action will be approved on appeal. (*Sandeen* v. *Russell Lumber Co.,* 45 Mont. 273, 122 Pac. 913; *Dorais* v. *Doll,* 33 Mont. 314, 83 Pac. 884.) This discretionary power authorizes a court in proper cases, even on its own motion, to direct an amendment if in its opinion a nonsuit or mistrial may be avoided.

It is further contended that the evidence is wholly insufficient to justify the verdict in any amount, as against Casey, or, in any event, that it does not justify a finding of punitive damages. The facts out of which this controversy grew are briefly the following: In August, 1910, the plaintiff and her husband were occupying a house in Butte which they had rented fully furnished. The husband, having closed up his business, went to Great Falls to seek employment, expecting the plaintiff to follow him. Before leaving he packed into a barrel and three boxes the glassware belonging to the plaintiff, and other similar articles usually found in a household, together with a set of the Encyclopedia Britannica, and a number of miscellaneous books, sheet music, *etc.* These latter articles were packed in one of the boxes. The barrel and boxes were marked plainly as the property of the plaintiff and stored at the warehouse of one Dorais, who kept a grocery store in Butte. Dorais kept the packages gratuitously and merely as an accommodation. Presently the

plaintiff also went to Great Falls, leaving the packages stored. Some time later Dorais' grocery business went into the hands of the Credit Men's Association of Butte, to be wound up for the benefit of its creditors. The association at first attempted to continue sales by retail, but finally concluded to sell out the stock by wholesale. This was done on or about October 12, 1910. The defendants Casey and Shoemaker were employees of the Butte Grocery Company. This company purchased a part of the Dorais stock and had it carted from the Dorais warehouse to its own warehouse. Both Casey and Shoemaker knew about the packages belonging to the plaintiff. While the purchases of the Butte Grocery Company were being carted to its warehouse under the direction of Casey and Shoemaker, Casey directed the drayman to bring plaintiff's packages to the company's warehouse. This order was countermanded by Shoemaker and, for the time, the packages were left at Dorais' place. On a later day the box of books and one of the other boxes was brought to the warehouse with other goods. By whose order this was done does not appear. Casey, who was at the time receiving the goods as they were brought to the warehouse of the Butte Grocery Company, ordered one of the helpers to take the packages up to the second story of the warehouse and store them. What the contents of the second box were, the evidence does not disclose; nor does it disclose their value, nor what became of the barrel and the other boxes. In December Mr. De Celles returned from Great Falls to look after the property but could not find any of the packages in the Dorais warehouse or that of the Butte Grocery Company. He was told by both Casey and Shoemaker that they knew nothing about them. Later on, about February 10, 1911, Mr. De Celles, in company with a constable armed with a search-warrant, went to the home of Shoemaker and there found the set of Encyclopedia Britannica and a lot of glassware which he identified as belonging to the plaintiff. He did not find the miscellaneous books and sheet music, nor any other of the articles. They were not found anywhere. Mr. De Celles took away the books, but left the glassware where he found it. About a

week or ten days after the boxes were taken to the grocery com-
pany's warehouse, in a conversation between Casey and Shoe-
maker overheard by one of the witnesses who was then in the
employ of the grocery company, the statement was made that
De Celles was indebted to the company about $35, that the books
would bring about $50, and that they (presumably the company)
would get more money than the bill amounted to. The witness
could not tell who made the statement. Prior to this time some-
one had opened the box containing the books and the witness
had learned what its contents were. This is a summary of all
the evidence, except that introduced on the subject of value.

It will be noted that direct personal responsibility for the
bringing of the two boxes to the company's warehouse is not
fixed upon anyone. Casey's direction to the drayman was
countermanded by Shoemaker and was not obeyed. Since a part
of the property in them was thereafter found in Shoemaker's
possession, it is a fair inference that he was responsible. Casey's
only connection with the matter was his direction to the helper
to store the boxes in the warehouse. The possession thus ac-
[3]   quired was that of the company and not his, and though,
since dominion over the property inconsistent with the ownership
of it by the plaintiff, was thus assumed by the company through
his instrumentality, this amounted to a technical conversion of
it by him and also the company, if he was acting within the
scope of his employment (2 Cooley on Torts, 3d ed., 859 *et seq.;*
*Tuttle* v. *Hardenberg,* 15 Mont. 219, 38 Pac. 1070) ; and though
[4]   the statute authorizes the imposition of punitive damages
in cases of this character if the defendant has acted maliciously,
fraudulently or oppressively either in taking or detaining the
property in controversy (Rev. Codes, sec. 6047; *Bohm* v.
*Dunphy,* 1 Mont. 333; *Shandy* v. *McDonald,* 38 Mont. 393, 100
Pac. 203; 1 Sedgwick on Damages, secs. 373, 374), there is noth-
ing in the evidence justifying an inference of malice, fraud or
oppression in anything Casey did. Apart from the fact that he
ordered the boxes stored after they reached the warehouse, there
is nothing to connect him with the taking or the subsequent de-

tention. It is true that he stated to Mr. De Celles and the plaintiff that he did not know anything as to the whereabouts of the boxes at the time the inquiry was made of him. So far as the evidence discloses anything to the contrary, this was true. That Shoemaker subsequently determined to appropriate the articles to his own use and did so is not inconsistent with the want of knowledge of the fact by Casey. Nor was mere knowledge by Casey of Shoemaker's subsequent misconduct sufficient to render him subject to the penalty which Shoemaker properly in-[5] curred thereby. It not appearing that Casey went further than to refuse to divulge such information as he had, assuming that he had any, that Shoemaker should be punished furnished no reason why Casey should also. (Sedgwick on Damages, sec. 382.) The evidence was sufficient to justify a verdict against Casey for the value of the contents of the box containing the books and also for a nominal amount for the conversion of the other box.

That the verdict was excessive because given under the influence of passion and prejudice of the jury, however, is clear. The amount to be awarded in this class of cases is lodged in the discretion of the jury; but this discretion is not unlimited or to be exercised arbitrarily. It will not do to say that the jury are free to make the measure of punishment whatever they choose, without any just or reasonable relation to the wrong done. No definite rule can be declared as to when the court should interfere and when it should not; yet since a new trial may be ordered when it appears that the jury have acted under the influence of passion and prejudice (Rev. Codes, sec. [6] 6794), it follows that when the award is so large that it cannot be accounted for on any other theory and is wholly out of proportion to the wrong done and the cause of it, the conclusion is irresistible that it was measured by the passion and prejudice of the jury, rather than by an estimate made in the exercise of their discretion, and it becomes the duty of the court to set it aside. So far as a general rule on the subject can be stated, this seems to be the one recognized by the courts. (Sedgwick on Dam-

ages, sec. 388; *Saunders* v. *Mullen,* 66 Iowa, 728, 24 N. W. 529; *Texas Land and Cattle Co.* v. *Nations* (Tex. Civ.), 63 S. W. 915; *Flanary* v. *Wood,* 32 Tex. Civ. 250, 73 S. W. 1072; *International & G. N. R. Co.* v. *Telephone & Tel. Co.,* 69 Tex. 277, 5 Am. St. Rep. 45, 5 S. W. 517; *McCarthy* v. *Niskern,* 22 Minn. 90; *Buford* v. *Hopewell,* 140 Ky. 666, 131 S. W. 502.) Applying this [7] rule to the facts of this case, we think the award of the jury was out of all proportion to the wrong done, even upon the assumption that Casey was guilty of such misconduct as would call for punishment. Notwithstanding the court required the plaintiff to accept the reduction of one-half of the award, the reduced amount is, under the authorities cited *supra,* still out of all proportion to the extent of the wrong done.

In requiring the plaintiff to remit what it deemed the excess, the trial court evidently was of the opinion that the award of [8] compensatory damages was justified by the evidence. As we view it, the plaintiff was entitled to recover from Casey some amount, *viz.,* the value of the contents of the box of books less the value of the Encyclopedia, the possession of which plaintiff recovered from Shoemaker, together with nominal damages for the other box. But the gross value thus recoverable could not exceed the value alleged in the complaint. Excluding the Encyclopedia, the value of all the articles that came into the hands of Casey, so far as it was shown, is alleged to be the following: Sheet music, $15; miscellaneous books, $18. Add to this amount a nominal sum of $1 for the conversion of the second box, and adding interest from the date of the conversion, which the court properly instructed the jury they might allow (Rev. Codes, sec. 6071), the gross sum chargeable to him could not exceed $38. What amount the jury should allow for the detention of the Encyclopedia was not submitted to nor considered by them. If it be assumed that the jury should have found the value of the Encyclopedia and included it in their verdict—and this they were authorized to do, as we shall see hereafter—the amount of the verdict still cannot be accounted for, for upon the undisputed evidence this itself was of the value of at least $50. It is

entirely possible that the jury, having had their prejudices aroused by the misconduct of Shoemaker, who furtively took and converted the property, and by reason of the fact that the plaintiff is a woman, disregarded the evidence tending to show the amount of compensatory damages and arbitrarily fixing the amount in this behalf, proceeded to punish both defendants for Shoemaker's misconduct, thinking this course would render plaintiff whole for the wrong done her. On the whole, and upon any theory of the case, we are of the opinion that the appellant is entitled to a new trial. In this view we are confirmed when we come to examine the instructions indicating the theory upon which the case was submitted to the jury. The defendants requested the court to instruct the jury, in effect, that since it appeared from the evidence that plaintiff had recovered possession of the Encyclopedia before the bringing of the action, she was not entitled to recover the value of it, the law being that she could not recover it and also its value. The request was refused and the case was submitted under instructions which authorized the jury to find and return a verdict for all the articles alleged to have been converted, including the Encyclopedia. While it may properly be said that the requested instruction was objectionable, in that it would have permitted the jury to regard the recovery of the books as *pro tanto* a complete defense to plaintiff's action, whereas it was proper to consider it only in mitigation of damages (*Watson* v. *Coburn*, 35 Neb. 492; *Murphy* v. *Hobbs*, 8 Colo. 17, 5 Pac. 637; Cooley on Torts, p. 78; Moak's Underhill on Torts, p. 97), those submitted by the court were no less so, because they allowed the jury to find a verdict for the full value of these books notwithstanding plaintiff had them in her own possession at the time the action was brought and at the time of the trial.

Other errors are assigned and discussed by counsel. We do not find prejudicial error in any of them. The judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. Justice Holloway and Mr. Justice Sanner concur.